State v. Bethea

STATE OF NORTH CAROLINA v. LEOLA BETHEA

No. 7012SC443

(Filed 21 October 1970)

1. Indictment and Warrant §§ 11, 12; Prostitution § 2— alteration of warrant — motion to quash

Defendant's motion to quash on the ground that the warrant charging her with prostitution was altered by striking out the name of the person solicited and by inserting the name of another person directly thereunder, *held* properly denied, since, in the absence of a contrary showing in the record, there is a presumption that the alteration was made prior to the time that the warrant was signed by the magistrate.

2. Prostitution § 2— prosecution — admission of evidence

In a prosecution charging the defendant with prostitution, there was no error in the admission of testimony concerning the statements and activities of a Negro man who was soliciting customers on behalf of defendant.

3. Prostitution § 2— prosecution — sufficiency of evidence

In a prosecution on a warrant charging defendant with engaging in "prostitution by offering her body to J. R. Minnick for the price of $15.00," the evidence of defendant's guilt was sufficient to go to the jury. G.S. 14-203, G.S. 14-204(7).

4. Criminal Law § 163— broadside exception to the charge

A broadside exception to the charge will not be sustained.

APPEAL from *McKinnon, J.,* 31 March 1970 Criminal Term, CUMBERLAND Superior Court.

This is a criminal prosecution on a warrant charging the defendant Leola Bethea with prostitution in violation of G.S. 14-204, a misdemeanor.

The defendant was first tried and convicted in the District Court of Cumberland County. She appealed to the Superior Court of Cumberland County for trial *de novo.* The defendant's motion in the superior court to quash the warrant was denied and the defendant pleaded not guilty.

The State offered evidence tending to show that about 9:00 p.m. on 21 April 1969 officers Vernon C. Riddick and J. R. Minnick of the Fayetteville Police Department were in the Tap Room of the Prince Charles Hotel in Fayetteville, North Carolina, when they were approached by a Negro man, later identified as Mr. Moore, who told the officers that he had "a couple of chicks" that he wanted to fix them up with.

State v. Bethea

Officers Riddick and Minnick were on duty and were not in uniform. Sometime later Officer Riddick observed the same Negro man talking to two women in the lobby of the hotel. Thereafter, the officers got in Officer Riddick's automobile with the same Negro man and proceeded from the hotel to the train station where the defendant and another woman got in the back seat of the automobile. The defendant and the other woman were the same women to whom Moore was observed talking in the lobby of the hotel.

After the defendant and the other woman got into the automobile, Officer Minnick asked the Negro man where they were going and the Negro man said " . . . first let's talk business." Officer Minnick then asked the other woman where they were going and she stated that she did not know and she left it up to the Negro man. Officer Riddick asked the Negro man what it was going to cost and was told by him that it would not cost too much, but that it was really up to the girls and that he was just helping them. Officer Riddick testified that they then asked the girls what it was going to cost and what the charge was for, and the girls said, "We're going to have some fun." The officers asked the girls what kind of fun and Mrs. Bethea and the other girl stated that they would go to their apartment on Murchison Road. The officers asked how much it would be and Mrs. Bethea told them twenty dollars. Officer Minnick said that $20.00 was a little steep, and the Negro man stated that $15.00 was good. When asked again what they were going to do, the Negro man stated that they were going to take us to bed. Officer Riddick testified that Mrs. Bethea then stated that she would be willing to go for $15.00. When the automobile occupied by the two officers, the Negro man, and the two women reached Raleigh Street, it was intercepted by other officers and the defendant was placed under arrest.

The defendant offered no evidence. Her motion for judgment as of nonsuit was denied. The jury found the defendant guilty as charged. From a judgment of imprisonment of six months, the defendant appealed.

*Attorney General Robert Morgan and Staff Attorney Edward L. Eatman, Jr., for the State.*

*Marion C. George Jr., for the defendant.*

HEDRICK, Judge.

[1]   The defendant first assigns as error the court's denial of her motion to quash the warrant which charged that the defendant engaged "in prostitution by offering her body to J. R. Minnick for the price of $15.00."

The defendant contends that the warrant was altered or amended by striking out the name of David M. Knipe and inserting the name of J. R. Minnick. An examination of the warrant in the record reveals that the name of J. R. Minnick is written directly under the name of David M. Knipe, and that the latter name is partially obliterated by lines drawn through it; however, the record fails to disclose this alteration was made subsequent to the time it was issued by the magistrate on 22 April 1969.

In *State v. Hickman*, 2 N.C. App. 627, 163 S.E. 2d 632 (1968), Mallard, Chief Judge, stated, "Regardless of what may actually have occurred during the trial of a case the appellate court is bound by the contents of the record on appeal. The record imports verity and the Court of Appeals is bound thereby."

In *State v. Duncan*, 270 N.C. 241, 154 S.E. 2d 53 (1967), the Supreme Court, speaking through Parker, Chief Justice, stated, "The record imports verity and the Supreme Court is bound thereby. The Supreme Court can judicially know only what appears of record. There is a presumption in favor of regularity. Thus, where the matter complained of does not appear of record, appellant has failed to make irregularity manifest."

In *Cook v. Georgia*, 119 Ga. 108, 46 S.E. 64 (1903), where the bill of indictment charging the defendant with murder showed on its face that the name of the victim had been interlined in lieu of another name which was crossed out, the Supreme Court of Georgia said, "But if the indictment had been demurred to upon the ground that it was defective because of an apparent alteration therein we think the demurrer would have been properly overruled. The presumption would have been that the erasure and interlineation were made before it was endorsed by the foreman."

To the same effect is *U.S. v. Chandler*, 157 F. Supp. 753 (1957), where the Court said: "In the absence of any showing to the contrary, the court must conclusively presume that the alteration was made prior to the time that the Grand Jury acted upon the indictment."

Therefore, in the absence of a showing in the record to the contrary, it is presumed that the interlineation of the name J. R. Minnick in lieu of the name of David M. Knipe was made prior to the time the magistrate signed the warrant upon which the defendant was tried in the District Court and in the Superior Court. This assignment of error is overruled.

[2] By assignment of error number two, the defendant contends that the court committed prejudicial error in allowing the State's witness to testify concerning alleged statements and activities of the Negro man sometimes referred to in the record as Mr. Moore. The evidence reveals that Moore was acting in behalf of, and for, the defendant. The defendant did not timely object to the conversation between the officers and Moore which occurred in the Tap Room. "An objection must be made in apt time, that is, as soon as the opponent has the opportunity to learn that the evidence is objectionable `. . . . Unless prompt objection is made, the opponent will be held to have waived it." Stansbury N. C. Evidence 2d, § 27, p. 51. All of the other statements attributed to him occurred in the automobile in the presence of the defendant while Moore, the defendant, and the officers were negotiating as to the price to be paid to the defendant and the other woman. State v. Russ, 2 N.C. App. 377, 163 S.E. 2d 84 (1968). This assignment of error is overruled.

[3] The defendant assigns as error the denial of her motion for judgment as of nonsuit made at the close of all the evidence. In this assignment of error, the defendant contends again that the warrant is fatally defective. She argues that it is not alleged in the warrant, and that the evidence does not show, that she offered to have sexual intercourse with anyone. We do not agree.

G.S. 14-204(7) provides that it shall be unlawful to engage in prostitution. G.S. 14-203 defines prostitution as " . . . the offering or receiving of the body for sexual intercourse for hire. . . . " The warrant charged the defendant with engaging in prostitution by offering her body to J. R. Minnick for $15.00. The evidence when considered in its light most favorable to the State permits the inference that the Negro male, referred to as Mr. Moore, acting for the defendant and her female companion, arranged to have Officers Minnick and Riddick meet the defendant and her female companion at the Fayetteville train station, and that while the defendant and the officers were in Officer Riddick's automobile the defendant Bethea offered to have sexual intercourse with J. R. Minnick for $15.00, and for that

purpose they would go to the defendant's apartment on Murchison Road. The motion for judgment as of nonsuit was properly denied.

[4] Based on a general exception to the charge, the defendant contends that the court committed error in its charge to the jury. This is a broadside exception and will not be sustained, *State v. Evers,* 1 N.C. App. 81, 159 S.E. 2d 372 (1968) ; furthermore, the entire charge was not brought forward in the record on appeal; therefore, it will be presumed that the charge was correct. *State v. White,* 232 N.C. 385, 61 S.E. 2d 84 (1950).

The defendant has other assignments of error which we have carefully considered and find without merit. We conclude that the defendant had a fair trial in the superior court free from prejudicial error.

No error.

Chief Judge MALLARD and Judge PARKER concur.