STATE OF NORTH CAROLINA v. RODERICK LIONEL KIRBY

No. 725SC489

(Filed 2 August 1972)

1. **Criminal Law § 158— validity of amendment to warrant — failure of of record to show amendment**

    Contention that the trial court erred in allowing an amendment to the warrant prior to defendant's trial *de novo* in the superior court cannot be considered by the appellate court where it does not appear in the record as stipulated by the solicitor what amendment, if any, was actually made to the warrant in the superior court.

2. **Criminal Law § 154— State's exception to record on appeal — consideration by appellate court**

    The appellate court cannot consider the contents of a purported exception by the State to the record on appeal which appears after the stipulation of the solicitor and defense counsel as to the record on appeal and is unsupported by the portions of the case accepted or stipulated to by the solicitor.

3. **Criminal Law § 154— service of case on appeal — extension of time — solicitor's statement**

    The trial judge, not the solicitor, has authority to grant extensions of time to serve the case on appeal, and a written statement by the solicitor that service of the case on appeal was accepted "in apt time" was ineffective.

4. **Indictment and Warrant § 12— amendment of warrant in superior court — validity**

    Upon defendant's appeal from the district court for a trial *de novo* in the superior court on a charge of assault on a public officer, amendment of the warrant in the superior court to allege the particular duty the officer was attempting to discharge when assaulted did not constitute error because the warrant was sufficient without the amendment, and the amendment did not change the offense charged.

5. **Assault and Battery § 11— assault on public officer — indictment or warrant — duty officer was performing**

    In order to charge an offense of *assaulting* a public officer in violation of G.S. 14-33(c)(4), the warrant or indictment need not set out with particularity the duty the officer was attempting to discharge at the time of the offense as is required in charging the offense of *resisting* a public officer in violation of G.S. 14-223, it being sufficient to allege generally that the officer was discharging a duty of his office when assaulted.

6. **Arrest and Bail § 6; Assault and Battery § 4— assault on public officer — resisting public officer — separate offenses**

    The trial court did not err in failing to "merge" a charge of resisting a public officer in discharging or attempting to discharge

a duty of his office and a charge of assaulting a public officer while discharging or attempting to discharge a duty of his office, since the two charges constitute separate and distinct offenses.

**7. Constitutional Law § 29; Jury § 7— jury list — absence of persons 18 to 21 years old**

The absence from the jury list of the names of persons between the ages of 18 and 21 during the period from 21 July 1971, the effective date of the amendment of G.S. 9-3 lowering the age requirement for jurors from 21 years to 18 years, and 6 December 1971, the date of defendant's trial, is not unreasonable and does not constitute systematic exclusion of this age group from jury service.

APPEAL by defendant from *Webb, Judge,* 6 December 1971 Session of Superior Court held in NEW HANOVER County.

The defendant Kirby was charged in a warrant with (1) assaulting a police officer and (2) resisting, hindering, delaying and obstructing a police officer and pleaded not guilty to both charges. At trial in the district court, defendant was found not guilty of obstructing an officer but was found guilty of assaulting an officer, and from judgment that he be committed as a youthful offender and be imprisoned for a period of one year, he appealed to the superior court for trial de novo.

In superior court the defendant, through his counsel, moved (1) in the alternative that the charge of assault be dismissed or that the case be remanded to district court for resentencing, (2) for dismissal on the ground of prior jeopardy and (3) to quash the venire on the grounds that it did not include persons between the ages of eighteen and twenty-one years. These motions, after argument by counsel and before the jury was empaneled, were denied by the trial court. Defendant thereupon pleaded not guilty, was duly tried by jury and convicted of assault on a police officer.

The evidence for the State consisted of the testimony of seven Wilmington City police officers, including the officer asaulted, W. R. Pearson. Most or all of these police officers had been present at the scene of and had witnessed the occurrences that led to the original charges lodged against this defendant. With only minor variations, the testimony of these witnesses tended to show that Pearson and other officers in uniform were, on 1 October 1971, on duty patrolling a stadium and parking lot where a high school football game was being played. Near the conclusion of this game, some disturbances,

which were erupting into fights and were apparently racial in origin, began to take place outside of the stadium. Officer Pearson approached two young Negro males in the stadium parking lot and instructed them to put their belts back into their pants and to buckle them. (The State's evidence tended to show that as the officer approached, one of the youths had his belt wrapped around his hand with the large buckle attached thereto hanging free, ostensibly for use as a weapon, and that the other youth had his belt in his pants but that it was unbuckled.) At this time and after one of the youths had failed, as directed, to put his belt back into his belt loops, the defendant Kirby, whom the officer was not addressing, intervened and announced, "My name is Roderick Kirby. You can't mess with us."

Kirby then stepped in front of the officer and struck or pushed him with his elbow; further blows were struck and by the time other officers could separate them, Kirby was sitting, kneeling or lying on top of Pearson, striking him with his fist in the face repeatedly, scratching him with his fingernails, and inflicting a number of minor injuries.

The defendant's evidence consisted of his own testimony, the testimony of the Reverend John A. Humphrey (as to defendant's reputation) and the testimony of a number of Negro youths, many of whom had been present in the stadium parking lot and who testified that they had witnessed some or all of the occurrences which led to the criminal charges against the defendant. This testimony tended to show that Kirby had offered to assist the officer in persuading the other youths to rebuckle their belts, but that Officer Pearson either accidentally or purposely struck Kirby with his nightstick. Some conversation between Kirby and Officer Pearson took place which, evidently, both found to be objectionable or insulting in part, and the fight thereafter ensued. The defendant Kirby contended that, primarily, he was trying to protect himself from the blows of the officer. Humphrey testified that he was acquainted with Kirby and his parents as "neighbors," that he had officiated at Kirby's wedding ceremony and that he knew the defendant's reputation to be "good."

From the judgment imposed on the verdict in the superior court that he be imprisoned for one year as a youthful offender, defendant appealed to the Court of Appeals, assigning error.

*Attorney General Morgan and Associate Attorney Witcover for the State.*

*Chambers, Stein, Ferguson & Lanning by Melvin L. Watt for defendant appellant.*

MALLARD, Chief Judge.

Defendant's first assignments of error relate to the warrant upon which he was tried and convicted. The affidavit portion of the warrant reads as follows:

"The State of North Carolina
        v.                              COMPLAINT FOR ARREST
Roderick Lionell Kirby
Age 18, Race N, Sex M
11 N. Lincoln Ct., City

The undersigned, W. R. Pearson, being duly sworn, complains and says that at and in the county named above and on or about the 1st day of Oct., 1971, the defendant named above did unlawfully, wilfully,

#1. Violate the law by assaulting an officer, to wit: W. R. Pearson by pushing him and striking him with his fist, he at the time knowing (the duty being performed by Officer Pearson consisted of attempting to determine why two young men with the defendant had their belts wrapped around their hands with the buckles loose and requesting that their belts be placed in and through the belt loops in their respective pair of pants), that said officer was a public officer. (Said officer is a member of the Wilmington Police Department and was discharging a duty of his office.)

#2. Roderick Lionell Kirby did further violate the law by resisting, (hindering) ~~handing~~, delaying, and obstructing said officer; to wit: officer W. R. Pearson by fighting said officer while he was arresting or attempting to arrest him for assault on an officer, knowing at the time that said officer was a public officer (and a member of the Wilmington Police Department).

The offense charged here was committed against the peace and dignity of the State and in violation of law G.S. 14-33, G.S. 14-223."

[1]  Preceding the affidavit portion of the warrant in the record on appeal is a "typist's note" which states, "Portions in parenthesis are hand written." Following the officer's return is the notation, "To the foregoing amendments to the warrant the defendant objects and excepts." Thereafter, it appears in the record under the heading, "The Following Motions Took Place Without Any Jurors Being Present," at page fourteen, that the solicitor stated ". . . at this time the State would like to move to amend the warrant to allege the duty that was being performed by the officer *at the time the arrest occurred.*" (Emphasis added.) The trial judge stated that he would allow the motion to amend, and on page fifteen of the record the solicitor replied, "Yes, sir. All right, Your Honor, it is being amended to this extent here at the bottom." However, it does not appear in the record as stipulated by the solicitor what amendment, if any, was actually made to the affidavit portion of the warrant upon which the defendant was tried de novo in superior court describing what duties the officer was performing "at the time the arrest occurred." The record as served on the solicitor and stipulated by him does not reveal that the officer involved was attempting to arrest the defendant or anyone else at the time he was assaulted by the defendant, nor does the record so served and stipulated guide us in determining what language, if any, was added to the warrant herein as a result of the allowance of this motion.

There does appear, however, some pertinent language, incorrectly placed in the record reproduced herein and shown in the original record as follows:

"ACCEPTANCE OF SERVICE

Service of the foregoing and within case accepted in apt time.

May
This 5th day of ~~April~~, 1972.

s/ JAMES T. STROUD, JR.
SOLICITOR

STIPULATION OF COUNSEL

The undersigned attorneys for both State and the defendant stipulate that the foregoing is a true and correct

State v. Kirby

copy of the transcript of the record and the evidence in this case.

s/ JAMES T. STROUD, JR.

SOLICITOR

With one Exception as stated below.

237 W. Trade St.    CHAMBERS, STEIN, FERGUSON & LANNING
Charlotte NC 28202              By: s/ MELVIN L. WATT
Phone: (704) 375-8461         Attorney for Defendant

*State's Exception # 1:* A motion to amend the first count in the warrant (which charged Assault on a Police Officer) was allowed before the Defendant's plea at the initial trial in *District Court* which was: 'Said officer is a member of the Wilmington Police Department and was discharging a duty of his office.' The amendment written in the middle portion of the warrant, to which the arrow points, was allowed at the trial de novo in Superior Court; it explains the duty which the officer was previously alleged to be performing and it does not allege an additional element of the crime or a different offense. The Defendant was adjudged guilty of the offense of Assault on a Public Officer in *District Court,* which is a general misdemeanor."

[2]   The above language "With one Exception as stated below" appears in typewritten form *after* the solicitor's signature, and the paragraph appearing after the signature of the defendant's attorney as "State's Exception #1" is also typewritten. In the original record, both of these passages appear to have been written with a different typewriter than were the other portions of the record or on a different occasion when the ribbon on the typewriter was showing some signs of wear (a condition that does not appear in the type preceding the signature of the solicitor). From the language of the acceptance of service of the case and the stipulation as to the transcript of the record by the solicitor, neither of these parts was in the case on appeal as served on the solicitor. Neither is there such a "State's Exception No. 1" appearing at any other place in the record, and the contents of this so-called "State's Exception No. 1" are not supported by the portions of the case accepted or stipulated to by solicitor as being "a true and correct copy of the transcript of the record and evidence in this case." However, even if we assume that the "State's Exception No. 1" is

an exception taken by the State (which we do not because it is not supported by the record preceding it), the time and contents of the amendments to the warrant, if any, are still in a confused state because there are two or more handwritten parts in the middle portion of the photostatic copy of the warrant in the original record filed in this court and two arrows pointing to separate and distinct portions. The "State's Exception No. 1" refers to only one arrow.

> "* * * The record imports verity and the Supreme Court is bound thereby. The Supreme Court can judicially know only what appears of record. There is a presumption in favor of regularity. Thus, where the matter complained of does not appear of record, appellant has failed to make irregularity manifest. * * *" *State v. Duncan,* 270 N.C. 241, 154 S.E. 2d 53 (1967).

See also, *State v. Bethea,* 9 N.C. App. 544, 176 S.E. 2d 904 (1970) and *State v. Hickman,* 2 N.C. App. 627, 163 S.E. 2d 632 (1968).

"After all, there is a presumption of regularity in the trial. In order to overcome that presumption it is necessary for matters constituting material and reversible error to be made to appear in the case on appeal. * * *" *State v. Sanders,* 280 N.C. 67, 185 S.E. 2d 137 (1971). The burden is upon an appellant to show error, and also that the error was prejudicial. *State v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342 (1955). "Further, it was the duty of the defendant to see that the record was properly made up and transmitted, and when the matter complained of does not appear of record, defendant has failed to show prejudicial error." *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745 (1971); see also, *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967); *State v. Hickman, supra;* and G.S. 15-180. "It is not the function of this Court to oversee the preparation of the record on appeal; that is the function of counsel." *State v. Waddell,* 3 N.C. App. 58, 164 S.E. 2d 75 (1968).

[3] Moreover, the record on appeal reveals that by order dated 10 December 1971, Judge Webb allowed the defendant 90 days to prepare and serve the case on appeal and the State 30 days after such service to prepare and serve a countercase. Thereafter, on 25 February 1972, Judge Webb entered two orders, in one of which he appears to have modified the appeal entries and reduced the time for the defendant to serve case on appeal

to 75 days and for the State to file a countercase to 15 days. In the other order there appears, "The defendant is hereby allowed an additional forty-five (45) days, making a total of 120 days within which to make up and serve his case on appeal." It therefore affirmatively appears in the record that the case on appeal was not served on the solicitor, but that on 5 May 1972 the solicitor attempted to accept service in the following language, "Service of the foregoing and within case accepted in apt time." May 5, 1972 is over 145 days after the date of the original appeal entries on 10 December 1971. Under G.S. 1-282 and Rule 50 of the Rules of Practice in the Court of Appeals, the trial judge, not the solicitor, has authority to grant extensions of time to serve case on appeal. It thus appears that the case on appeal was not properly served within the time allowed by the trial judge and the statement by the solicitor in accepting service that it was accepted "in apt time" is ineffective. "It is axiomatic among those engaged in appellate practice that a 'statement of case on appeal not served in time' may be disregarded or treated as a nullity." *State v. Moore*, 210 N.C. 686, 188 S.E. 421 (1936).

[4] However, even if we assume that the case is properly before us, which we do not, and if we further assume, as defendant contends, that the State was permitted to amend the warrant (and did so) in the superior court by adding the words "the duty being performed by Officer Pearson consisted of attempting to determine why two young men with the defendant had their belts wrapped around their hands with the buckles loose and requesting that their belts be placed in and through the belt loops in their respective pair of pants," such amendment did not constitute error.

"The power to amend the warrant in the Superior Court is limited to amendments which do not effect a change in the charge." 2 Strong, N. C. Index 2d, Criminal Law, § 18. This amendment would not have effected a change in the charge. Even the defendant does not contend that the warrant upon which he was tried in district court did not charge that "Said officer is a member of the Wilmington Police Department and was discharging a duty of his office." The defendant does argue, however, that this does not sufficiently charge an offense punishable on 1 October 1971 under the provisions of G.S. 14-33 which reads in pertinent part:

"(c) Unless his conduct is covered under some other provision of law providing greater punishment, any person who commits any assault, assault and battery, or affray is punishable by a fine, imprisonment for not more than two years, or both such fine and imprisonment if in the course of such assault, assault and battery, or affray he:

(4) Assaults a public officer while such officer is discharging or attempting to discharge a duty of his office."

[5] The clear legislative intent in enacting this provision was to provide greater punishment for those who place themselves in open defiance of duly constituted authority by assaulting public officers who are on duty. In the case before us the affidavit portion of the warrant on which defendant concedes he was tried in the district court contained the language used in the statute, and we think was sufficient. However, the defendant urges that the same rule should apply to assaults on an officer under G.S. 14-33(c)(4) as is applied to resisting officers under G.S. 14-223, both of which contain similar language relating to the officer discharging or attempting to discharge a duty of his office.

The cases cited by defendant are distinguishable. In *State v. Dunston*, 256 N.C. 203, 123 S.E. 2d 480 (1962) and some of the other cases cited by defendant in his brief, the Supreme Court has held that in order to charge the offense of resisting a public officer the warrant or indictment must set out with some particularity the duty the designated officer was discharging or attempting to discharge at the time of the offense. There is a distinction between the two offenses: In the offense of resisting an officer, the *resisting* of the public officer in the *performance* of some duty is the primary conduct proscribed by that statute and the particular duty that the officer is performing while being resisted is of paramount importance and is very material to the preparation of the defendant's defense, while in the offense of assaulting a public officer in the performance of some duty, the *assault* on the officer is the primary conduct proscribed by the statute and the particular duty that the officer is performing while being assaulted is of secondary importance. The legislative intent appears to be that if a public officer is assaulted in performing or attempting to perform *any* duty of his office, the provision of G.S. 14-33(c)(4) is applicable.

We hold that the affidavit portion of the warrant, as it appears in the record of the case before us, was sufficient to charge all of the elements of the offense of which defendant was convicted, to apprise defendant of all the particulars of the offense charged necessary for him to prepare his defense, to place the defendant in position to plead former jeopardy in the event he was again brought to trial for the same offense and to allow the trial judge to pronounce proper judgment upon the jury verdict of guilty. See, *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), *cert. denied*, 403 U.S. 940; *State v. Dorsett* and *State v. Yow*, 272 N.C. 227, 158 S.E. 2d 15 (1967); and G.S. 15-153. Therefore, we hold that this case was properly before the superior court on appeal from the conviction in the district court and that the trial judge did not err in failing to dismiss the case or to remand it to district court for resentencing, and the defendant's assignments of error in these regards are overruled.

[6] We further hold that the charge of resisting an officer (of which the defendant was acquitted in district court) and the charge of assaulting a public officer while discharging or attempting to discharge a duty of his office are separate and distinct offenses and that the trial judge did not err in failing to "merge" them. See *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44 (1967). No actual assault or force or violence is necessary to complete the offense described by G.S. 14-223. *State v. Leigh*, 278 N.C. 243, 179 S.E. 2d 708 (1971). Defendant's contention that this failure to "merge" the two offenses subjected the defendant Kirby to double jeopardy and constituted reversible error is also without merit.

[7] The defendant also contends that the trial court erred by failing to quash the panel of jurors. Prior to the empanelling of the jury in the superior court, defendant moved that the venire be quashed, because, he alleged, it was drawn from a list "which by statute was prohibited from containing the names of persons below the age of twenty-one (21) and was, therefore, not composed of persons who were the peers of the defendant." In regard to this motion, testimony was taken from two witnesses.

Alice Granger testified that she was employed as a Deputy Clerk of Superior Court since 3 June 1971 and that, pursuant to instructions, she normally withdrew a predetermined number of "jury disks" from a box and took them to the Register of

Deeds where the names and addresses were matched to the numbers on the disks. She also testified that "a new list" had been prepared between June 1971 and the time of her testimony, but that the jurors "called for this term of criminal court were called from the old list," that 4 January 1972 would be the first time that "jurors off the new list" would be called and that she did not know "whether or not persons between the age of eighteen and twenty-one have been included on the new list which goes into effect after the first of next year."

The defendant Kirby testified to the effect that he and a number of other persons (some of whom later testified in his behalf) were below the age of twenty-one years.

Even assuming that this evidence did establish that the jury list from which the jury in this case were drawn did not include persons between the ages of eighteen and twenty-one years (which it does not do), there is no sufficient showing that this defendant was denied any constitutional right by the trial court's refusal to quash the jury panel in this case, and defendant's assignments of error in this regard are overruled.

In *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972), Justice Branch, speaking for the North Carolina Supreme Court, first noted that G.S. 9-3 had been amended, effective 21 July 1971, to make persons eighteen years and older eligible for jury duty, which raised the question in that case of "whether there was intentional, arbitrary or systematic discrimination against this age group in the institution and management of the jury system." He then said:

"The North Carolina plan imposes a two-years lapse in preparation of new jury lists as opposed to the five-year plan adopted by some federal courts. *United States v. Kuhn,* 441 F. 2d 179 (5th Cir. 1971). We also note, parenthetically, that as of 4 February 1972 the United States Congress had not amended 28 U.S.C.A. § 1865 to require the federal district courts to include the names of persons under twenty-one years of age on their jury lists.

The North Carolina statutory plan for the selection and drawing of jurors is constitutional and provides a jury system completely free of discrimination to any cognizable group.

The absence from the jury list of the names of persons between the ages of eighteen and twenty-one for the short period of time herein complained of [two months and one day] is not unreasonable, and does not constitute systematic and arbitrary exclusion of this age group from jury service."

Admittedly, the lapse of time between the amendment of G.S. 9-3 and the date of trial is somewhat longer in this case than it was in *Cornell;* nevertheless, there is no evidence in this case that the time elapsed was unreasonable, or that there was any systematic or arbitrary exclusion of persons between the ages of eighteen and twenty-one years from jury service. In fact, it affirmatively appears from the testimony of Alice Granger that the jury commissioners of New Hanover County had begun preparation of a new jury list for the ensuing biennium "at least thirty days" prior to 1 January 1972. See *State v. Cornell, supra.* The defendant Kirby was tried at the 6 December 1971 Session of Superior Court held in New Hanover County. No error in this regard is made to appear.

The remainder of the defendant's assignments of error concern the admission of evidence during the trial and the judge's charge to the jury, and are based upon a total of forty-one exceptions in the record. Specifically, the defendant contends that the following constituted prejudicial error: (1) permitting the State's witnesses to testify and the solicitor to question in certain instances "without corrective instructions," (2) the introduction as exhibits of three photographs of Officer Pearson taken shortly after he was assaulted by the defendant, (3) the trial court's instructions as to self-defense and provocation, (4) the alleged failure of the trial court to give equal stress to the contentions of the State and of the defendant, (5) the alleged invasion by the trial court of the province of the jury in two instances, and (6) the trial judge's alleged intimations, when instructing the jury, that the defendant was not worthy of belief.

Suffice it to say that although we do not deem it necessary to discuss each of these questions in detail here, we have carefully examined the entire record on appeal, the testimony given, the cross-examination of witnesses, the introduction of exhibits and the court's charge to the jury. While some of the defendant's exceptions may have some merit if considered apart from the record as a whole, we do not think prejudicial error appears

warranting a new trial. It affirmatively appears that Judge Webb protected the rights of this defendant, and the defendant's assignments of error insofar as they suggest that he attempted to prejudice the jury against him are specifically overruled. If we assume that the case is properly before us, in the trial in superior court we find no prejudicial error.

No error.

Judges CAMPBELL and BRITT concur.