HUNTER, JR., ROBERT N., Judge.
 

 *355
 
 Kandra Dorell Nickens ("Defendant") appeals from a 10 August 2017 judgment after a jury convicted her of resisting a law enforcement officer and of second-degree trespass. The trial court sentenced Defendant to a sentence of forty-five days, suspended with twelve months of special, supervised probation and seven days in the custody of the Harnett County Sheriff's Office. Defendant argues on appeal: (1) the indictment was insufficient in the charge of resisting a public officer; (2) the trial court erred by denying Defendant's motion to dismiss the charge of resisting a public officer; (3) the trial court erred by denying Defendant's motion to dismiss the charge of second-degree trespass, due to a fatal variance between the indictment and evidence offered at trial; (4) the trial court erred by denying Defendant's motion to dismiss the charge of second-degree trespass based on Defendant's lack of implied consent to be on the premises; (5) the trial court committed plain error instructing the jury on second-degree trespass; and, (6) Defendant received ineffective assistance of counsel.
 

 We disagree, and hold (1) the indictment alleged sufficient facts for each element of the offenses charged; (2) the trial court did not err in denying Defendant's motions to dismiss the charges of resisting a public officer and second degree trespass based on a fatal variance and lack of implied consent; (3) the trial court did not err in its jury instructions; and, (4) hold defense counsel's performance did not constitute ineffective assistance of counsel.
 

 *356
 

 I. Factual and Procedural Background
 

 On the morning of 12 January 2017, Defendant went to the North Carolina Division of Motor Vehicles ("NCDMV") Driver's License
 
 *869
 
 Office in Erwin, North Carolina, to update her address. Senior Examiner Melissa Overby ("Ms. Overby") assisted Defendant, asked for her driver's license, and told her to take a seat. Defendant, who was wearing a head scarf, complied. Ms. Overby informed Defendant her photo could not be taken if she was wearing the scarf. Ms. Overby then asked Defendant if she had a medical or religious reason for wearing the scarf, and Defendant said she did.
 

 Ms. Overby provided Defendant a "head gear affidavit[ ]," on which Defendant could declare a medical or religious exemption, thus allowing her to wear the scarf in her license photo. Defendant told Ms. Overby she would neither sign the form nor remove her scarf. Defendant then "got upset" and told Ms. Overby she wanted someone else to take her picture. Ms. Overby told Defendant to have a seat in a nearby station until another examiner became available to assist her. Defendant grew more upset, and "started using some cuss words[.]"
 

 Ms. Overby "realized it wasn't going anywhere" and turned to her computer to enter Defendant's driver's license number and enter a note in her file concerning the dispute. At that time, Defendant stood nearby "wanting her driver's license back." Ms. Overby was "listening to her, but not really listening to what she was saying because ... at that point she is upset[.]" Defendant "kept getting louder and louder and louder[.]"
 

 During this time, Inspector Brandon Wall of the NCDMV License and Theft Bureau ("Inspector Wall") was in his office in a separate part of the building when a loud voice drew his attention. A former detective with the Lee County Sheriff's office, Inspector Wall said the voice he heard, "piqued my law enforcement interest." Inspector Wall-dressed in his "Class B" uniform that included a badge, sidearm, and handcuff case-walked from his office to the public lobby of the NCDMV, where he saw Defendant "standing up, talking loudly." He saw Defendant creating a scene that left other customers in the lobby "in disarray" and "looking around, trying to figure out what was going on." Inspector Wall attempted to get Defendant's attention, was unable to do so, and subsequently approached her. Inspector Wall saw that Ms. Overby had Defendant's license in her hand.
 

 Based on Defendant's loud talking and cursing, Inspector Wall told Defendant she needed to leave. Defendant replied "she was in a public building[, s]he wanted a real law enforcement officer[, and s]he wasn't
 
 *357
 
 going to leave." Inspector Wall repeated that "she had to go." He reached to take Defendant's license from Ms. Overby. As Inspector Wall was telling Defendant to leave a second time, he touched Defendant's elbow to "guide her out." Angered by Inspector Wall's action, Defendant yelled at him, "get your f***ing hands off me." Inspector Wall pulled away and reiterated his request for Defendant to leave. His attempts to guide Defendant out of the building were polite, but firm, and the touching was not forceful in nature.
 

 Inspector Wall again reached toward Defendant in an attempt to "guide her" out of the building. Defendant shoved Inspector Wall, and a "pushing match" ensued for "ten seconds to fifteen, twenty seconds." Inspector Wall began trying to effect an arrest. Defendant headed towards the front door, but Inspector Wall believed "that's not an option at this point[.]" As the two struggled, they became "locked up." Inspector Wall tried to restrain Defendant as she tried to get away, and Defendant "lash[ed] out at" Inspector Wall. Inspector Wall then "took [Defendant] down to the ground" and Defendant commented "get off of me" and "I want a real cop[.]" Inspector Wall replied, "I am a cop[,]" and other employees of the DMV told Defendant that Inspector Wall "was a cop as well."
 

 Scared by the events, Ms. Overby called the police. An officer with the Erwin Police Department arrived and assisted Inspector Wall. Defendant was taken to a break room in the back of the building, where she was "still cursing, still yelling." During the struggle, Defendant bit Inspector Wall in the arm, and continued to yell at him and to resist. Inspector Wall also suffered an abrasion to his elbow. Throughout Defendant's interaction with Inspector Wall, she demanded a "real cop," and Inspector Wall and Ms. Overby
 
 *870
 
 told her Inspector Wall was, in fact, "police" and a "real cop."
 

 On 20 February 2017, a grand jury in Harnett County indicted Defendant for one count each of assault inflicting physical injury on a law enforcement officer, resisting a public officer, and second-degree trespass. On 7 August 2017, the case came on for trial in Harnett County Superior Court. On 10 August 2017, a jury found Defendant not guilty of assault inflicting physical injury on a law enforcement officer, and guilty of resisting a public officer and of second-degree trespass. The trial court found Defendant to have a prior record level II for misdemeanor sentencing purposes; sentenced Defendant to 45 days in the custody of the Sheriff of Harnett County; and, suspended the sentence for 12 months of special, supervised probation, with an active term of seven days in the Sheriff's custody. Defendant gave oral notice of appeal.
 

 *358
 

 II. Jurisdiction
 

 Our jurisdiction over an appeal from a final judgment of a North Carolina Superior Court is appropriate pursuant to N.C. Gen. Stat. § 7A-27(b) (2017) and N.C. Gen. Stat. § 15A-1444(a) (2017).
 

 III. Standard of Review
 

 A. Sufficiency of the Indictment
 

 When evaluating the sufficiency of an indictment, North Carolina law has established
 

 [t]here can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence of an accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction a trial and conviction are a nullity. [W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of [subject matter] jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court. This Court review[s] the sufficiency of an indictment
 
 de novo
 
 . An arrest of judgment is proper when the indictment wholly fails to charge some offense cognizable at law or fails to state some essential and necessary element of the offense of which the defendant is found guilty. The legal effect of arresting the judgment is to vacate the verdict and sentence of imprisonment below, and the State, if it is so advised, may proceed against the defendant upon a sufficient bill of indictment.
 

 State v. Harris
 
 ,
 
 219 N.C. App. 590
 
 , 593,
 
 724 S.E.2d 633
 
 , 636 (2012) (citations and internal quotation marks omitted, alterations in
 
 Harris
 
 ).
 

 B. Motions to Dismiss
 

 Our Court reviews a trial court's denial of a motion to dismiss
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). A denial of a motion to dismiss is proper if "there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense."
 

 Id.
 

 at 62
 
 ,
 
 650 S.E.2d at 33
 
 (citation omitted). On a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192-193,
 
 451 S.E.2d 211
 
 , 223 (1994) (citation omitted).
 

 *359
 

 C. Ineffective Assistance of Counsel
 

 "It is well established that ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required ...."
 
 State v. Thompson
 
 ,
 
 359 N.C. 77
 
 , 122-23,
 
 604 S.E.2d 850
 
 , 881 (2004) (citation and quotation marks omitted). "Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court."
 
 Id.
 
 at 123,
 
 604 S.E.2d at 881
 
 ,
 
 359 N.C. 77
 
 . "The standard of review for alleged violations of constitutional rights is
 
 de novo
 
 . Once error is shown, the State bears the burden of proving the error was harmless beyond a reasonable doubt."
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009) (citations omitted).
 

 *871
 

 D. Plain Error
 

 "In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) ;
 
 see also
 

 State v. Goss
 
 ,
 
 361 N.C. 610
 
 , 622,
 
 651 S.E.2d 867
 
 , 875 (2007). Our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence."
 
 State v. Gregory
 
 ,
 
 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996).
 

 IV. Analysis
 

 A. Sufficiency of the Indictment
 

 Defendant first argues the trial court lacked jurisdiction over the charge of resisting a public officer because the indictment was invalid on its face. Defendant contends the indictment is facially invalid because it (1) "fails to allege the public office held by Inspector Wall with sufficient specificity to allow [Defendant] to prepare a defense," and (2) "fails to fully and clearly articulate a duty that Inspector Wall was attempting to discharge."
 

 *360
 

 Indictment Requirements
 

 Under Section 15A-924(a)(5), an indictment must contain:
 

 A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
 

 N.C. Gen. Stat. § 15A-924(a)(5) (2017). "As a prerequisite to its validity, an indictment must allege every essential element of the criminal offense it purports to charge, although it need only allege the ultimate facts constituting each element of the criminal offense."
 
 Harris
 
 ,
 
 219 N.C. App. at 592
 
 ,
 
 724 S.E.2d at 636
 
 (citations and internal quotation marks, and brackets omitted). "[W]hile an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form."
 
 Id.
 
 at 592,
 
 724 S.E.2d at 636
 
 (citation omitted). Generally, "an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words."
 
 Id
 
 . at 593,
 
 724 S.E.2d at 636
 
 (citation omitted). Considering the general sufficiency of allegations, our Supreme Court has determined a warrant or bill of indictment must identify the officer-the person alleged to have been resisted, delayed or obstructed-by name; indicate the official duty he was discharging or attempting to discharge; and should point out, generally, the manner in which the defendant is charged with having resisted, delayed, or obstructed the officer.
 
 State v. Smith
 
 ,
 
 262 N.C. 472
 
 , 474,
 
 137 S.E.2d 819
 
 , 821 (1964) ;
 
 State v. Fenner
 
 ,
 
 263 N.C. 694
 
 , 700,
 
 140 S.E.2d 349
 
 , 353 (1965) ;
 
 State v. Wiggs
 
 ,
 
 269 N.C. 507
 
 , 512,
 
 153 S.E.2d 84
 
 , 88 (1967) ;
 
 State v. White
 
 ,
 
 3 N.C. App. 443
 
 , 445,
 
 165 S.E.2d 19
 
 (1969).
 

 The indictment by which the Grand Jury charged Defendant alleges violations of: (I)
 
 N.C. Gen. Stat. § 14-37
 
 (c)(1), "ASSAULT PHYSICAL INJURY LEO"; (II)
 
 N.C. Gen. Stat. § 14-223
 
 , "RESISTING PUBLIC OFFICER"; and (III)
 
 N.C. Gen. Stat. § 14-159.13
 
 , "SECOND DEGREE TRESPASS."
 
 [R. 4]
 
 The indictment specifies:
 

 I. The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did assault Agent B.L. Wall, a state law enforcement officer employed by the North Carolina
 
 *361
 
 Division of Motor Vehicles who was discharging or attempting to discharge his official duties, by scratching and hitting the officer with her hands and biting the officer on the back of the arm, and inflicted physical injury on the officer.
 

 II. The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully and willfully did resist, delay and obstruct Agent B.L. Wall, a public officer
 
 *872
 
 holding the office of North Carolina State Law Enforcement Agent, by refusing commands to leave the premises, assaulting the officer, refusing verbal commands during the course of arrest for trespassing and assault, and continuing to resist arrest.
 

 III. The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully and willfully did without authorization remain on the premises of the North Carolina Division of Motor Vehicles Driver's License Office located at 125 W. Jackson Blvd., Erwin, N.C. 28339, after having been notified not to remain there by a person in charge of the premises, Agent B.L. Wall.
 

 We first must assess whether the indictment sufficiently names the officer.
 
 See
 

 Smith
 
 ,
 
 262 N.C. at 474
 
 ,
 
 137 S.E.2d at 821
 
 . In
 
 State v. Powell
 
 , for example, this Court considered the sufficiency of an indictment's specificity.
 
 10 N.C. App. 443
 
 ,
 
 179 S.E.2d 153
 
 (1971). We held because the warrant neither named the officer on its face nor named the defendant in the order of arrest, the warrant was insufficient, fatally defective, and void.
 
 Id.
 
 at 450,
 
 179 S.E.2d at 158
 
 . In
 
 State v. McKoy
 
 , this Court held indictments "do not need to state the victim's full given name, nor do they need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person."
 
 196 N.C. App. 650
 
 , 654,
 
 675 S.E.2d 406
 
 , 409 (2009).
 

 Here, in the first count, Inspector Wall is identified as "Agent B.L. Wall, a state law enforcement officer employed by the North Carolina Division of Motor Vehicles." In the second count, he is identified as "Agent B.L. Wall, a public officer holding the office of North Carolina Law Enforcement Agent." Both counts, taken together, provide Defendant with sufficient information to identify and locate Inspector Wall. Defendant relies on
 
 State v. Swift
 
 to support her argument, arguing
 
 *362
 
 the indictment insufficiently identifies the officer.
 
 See
 

 State v. Swift
 
 ,
 
 105 N.C. App. 550
 
 ,
 
 414 S.E.2d 65
 
 (1992). Such reliance is misplaced, however, because in
 
 Swift
 
 the indictment named the wrong officer.
 
 See
 

 id.
 
 at 552-53,
 
 414 S.E.2d at 67
 
 . Unlike the indictment in
 
 Swift
 
 , the indictment here identifies the correct officer, by name, as the one who has been resisted, delayed, or obstructed.
 
 See
 

 Smith
 
 ,
 
 262 N.C. at 474
 
 ,
 
 137 S.E.2d at 821
 
 . Unlike
 
 Powell
 
 , where the warrant was insufficient,
 
 see
 

 10 N.C. App. at 450
 
 ,
 
 179 S.E.2d at 158
 
 , we hold the indictment sufficient because it names the officer on its face, including initials and full last name. We likewise hold the specificity of the office held by Inspector Wall facially sufficient. Inspector Wall's identification in the first charge as "employed by the North Carolina Division of Motor Vehicles[,]" and in the second charge as "holding the office of North Carolina Law Enforcement Agent[,]" provides enough information to identify Inspector Wall by both name and employment.
 

 We also must assess whether the indictment specifies the official duty Inspector Wall was discharging or attempting to discharge.
 
 See
 

 Smith
 
 ,
 
 262 N.C. at 474
 
 ,
 
 137 S.E.2d at 821
 
 . In count two, the indictment charges Defendant with "refusing commands to leave the premises," "refusing verbal commands during the course of arrest for trespassing and assault[,]" and "continuing to resist arrest." In count three, the indictment specifies Defendant "did without authorization remain on the premises of the North Carolina Division of Motor Vehicles Driver's License Office located at 125 W. Jackson Blvd., Erwin, N.C. 28339, after having been notified not to remain there by a person in charge of the premises." We hold the charges specifically state the duties Inspector Wall was attempting to discharge, namely: commanding Defendant to leave the premises and arresting or attempting to arrest her when she failed to comply.
 

 Finally, to determine whether the indictment is facially valid, we must assess whether it properly points out, in a general manner, the way Defendant is charged with resisting or attempting to resist or obstruct Inspector Wall.
 
 See
 

 Smith
 
 ,
 
 262 N.C. at 474
 
 ,
 
 137 S.E.2d at 821
 
 . Under Section 14-223, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a
 
 *873
 
 Class 2 misdemeanor."
 
 N.C. Gen. Stat. § 14-223
 
 (2017) ;
 
 see
 

 State v. Kirby
 
 ,
 
 15 N.C. App. 480
 
 , 488,
 
 190 S.E.2d 320
 
 , 325 (1972) ("[T]he resisting of the public officer in the performance of some duty is the primary conduct proscribed by this section, and the particular duty the officer is performing while being resisted is of paramount importance and is material to the preparation of the defense[.]").
 
 *363
 
 Therefore, we must determine whether Inspector Wall was acting within the scope of his duties in his interaction with Defendant.
 

 North Carolina caselaw has not specifically addressed the scope of NCDMV officers' powers to arrest, and neither Defendant nor the State have cited to cases directly on point.
 
 N.C. Gen. Stat. § 20-49.1
 
 states, in pertinent part:
 

 (a) In addition to the law enforcement authority granted in G.S. 20-49 or elsewhere, the Commissioner and the officers and inspectors of the Division whom the Commissioner designates have the authority to enforce criminal laws under any of the following circumstances:
 

 (1) When they have probable cause to believe that a person has committed a criminal act in their presence and at the time of the violation they are engaged in the enforcement of laws otherwise within their jurisdiction.
 

 N.C. Gen. Stat. § 20-49.1
 
 (a) (2017). Defendant acknowledges in her brief that DMV Inspectors do have authority to enforce criminal laws "under certain limited circumstances."
 

 N.C Gen. Stat. § 20-49.1(a) contains an expansive grant of power that vests DMV inspectors with "the same powers vested in law enforcement officers by statute or common law."
 
 N.C. Gen. Stat. § 20-49.1
 
 (a). While we recognize the legislature has narrowed the jurisdiction of DMV inspectors, Inspector Wall was acting under the authority given to him by
 
 N.C. Gen. Stat. § 20-49
 
 at the time the disturbance began.
 
 See
 

 N.C. Gen. Stat. § 20-49
 
 (2017). While not unlimited, Inspector Wall's authority exists in the office where he works.
 
 See
 

 N.C. Gen. Stat. § 20-49.1
 
 (a). Accordingly, we hold Inspector Wall was acting within the scope of his duties during his interaction with Defendant.
 

 Based on the above, we hold the indictment facially sufficient. It identified Inspector Wall, by name and office; the duties to be discharged by Inspector Wall; and, the general manner in which Defendant obstructed Inspector Wall in the discharge of his duties.
 
 See
 

 Smith
 
 ,
 
 262 N.C. at 474
 
 ,
 
 137 S.E.2d at 821
 
 . Even though the indictment could have been be more specific, we decline to require that it be hyper-technical.
 
 See
 

 Harris
 
 ,
 
 219 N.C. App. at 592
 
 ,
 
 724 S.E.2d at 636
 
 . It identified charges against Defendant with ultimate facts allowing Defendant to sufficiently mount a defense. Accordingly, we hold the indictment was sufficiently specific and facially valid.
 

 *364
 

 B. Motions to Dismiss
 

 i. Resisting a Public Officer
 

 Defendant next asserts the trial court erred by denying Defendant's motion to dismiss the charge of resisting a public officer. Defendant argues the State presented insufficient evidence Inspector Wall was discharging a duty of his office at the time of Defendant's arrest.
 

 The elements of resisting arrest are:
 

 1) that the victim was a public officer;
 

 2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
 

 3) that the victim was discharging or attempting to discharge a duty of his office;
 

 4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
 

 5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.
 

 State v. Sinclair
 
 ,
 
 191 N.C. App. 485
 
 , 488-89,
 
 663 S.E.2d 866
 
 , 870 (2008) (citations omitted);
 
 see also
 

 N.C. Gen. Stat. § 14-223
 
 . This statute "presupposes lawful conduct of the officer in discharging or attempting to discharge a duty of his office."
 

 Id.
 

 at 489
 
 ,
 
 663 S.E.2d at 870
 
 . We must consider Section 14-233 and its
 
 *874
 
 elements in conjunction with the scope of authority established in Sections 20-49 and 20-49.1. It is clear Section 20-49.1 is dependent upon Section 20-49, as it defines "Supplemental police authority of Division officers," and is coextensive with the grant of authority delineated in Section 20-49.
 
 See
 

 N.C. Gen. Stat. §§ 14-223
 
 , 20-49, 20-49.1.
 

 The State presented evidence at trial showing Inspector Wall discharged a duty falling within the scope of both Sections 20-49 and 20-49.1. The evidence also showed Defendant's conduct satisfied each element of resisting arrest.
 
 See
 

 N.C. Gen. Stat. § 14-223
 
 ;
 
 Sinclair
 
 ,
 
 191 N.C. App. at 488-89
 
 ,
 
 663 S.E.2d at 870
 
 . As explained above, Inspector Wall was discharging his duty by commanding Defendant to leave the premises and arresting her when she failed to comply. Sections 20-49 and 20-49.1 delineate Inspector Wall's scope of authority, and define the limits of his authority as a "inspector[ ] of the Division [of Motor Vehicles]."
 
 N.C. Gen. Stat. § 20-49.1
 
 . It is clear from the evidence presented Inspector Wall
 
 *365
 
 acted within the parameters established under both Section 20-49 and 20-49.1 when taken together.
 

 Additionally, under Section 15A-401, "[a]n officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense ... in the officer's presence." N.C. Gen. Stat. § 15A-401(b)(1) (2017). When Defendant refused to leave the premises of the DMV office, Inspector Wall had probable cause to believe Defendant committed a criminal offense.
 
 See
 

 Parker v. Hyatt
 
 ,
 
 196 N.C. App. 489
 
 , 497,
 
 675 S.E.2d 109
 
 , 114 (2009) ("[T]he authority of the State to charge an offender would be subverted if an officer imbued with power to arrest was required to ignore the crime occurring in his or her jurisdiction."). Accordingly, we hold the trial court's denial of the motion to dismiss the charge of resisting a public officer was proper.
 

 ii. Second-Degree Trespass
 

 Defendant next asserts the trial court erred by denying Defendant's motion to dismiss the charge of second-degree trespass, because of a fatal variance.
 

 N.C. Gen. Stat. § 14-159.13
 
 provides:
 

 (a)
 
 Offense.
 
 -A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another:
 

 (1) After he has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person ....
 

 N.C. Gen. Stat. § 14.159.13
 
 (2017).
 

 Defendant argues there was a fatal variance between the allegation in the indictment and the evidence offered at trial. Specifically, Defendant contends the State did not present sufficient evidence Inspector Wall was "a person in charge of the premises" and therefore, the trial court should have granted Defendant's motion to dismiss this charge. However, Defendant concedes this issue was not preserved for appellate review at trial, and requests this Court to invoke Rule 2 to reach the merits of this argument.
 

 To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it
 
 *366
 
 upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
 

 N.C.R. App. P. 2 (2018).
 

 "This Court repeatedly has held a [d]efendant must preserve the right to appeal a fatal variance."
 
 State v. Hill
 
 ,
 
 247 N.C. App. 342
 
 , 347,
 
 785 S.E.2d 178
 
 , 182 (2016) (citations and quotation marks omitted). "If the fatal variance was not raised in the trial court, this Court lacks the ability to review that issue."
 

 Id.
 

 at 347
 
 ,
 
 785 S.E.2d at 182
 
 (citation omitted);
 
 see also
 
 N.C.R. App. P. 10 (2018). This Court should only invoke Rule 2 in "exceptional circumstances ... in which a fundamental purpose of the appellate rules is at stake."
 
 State v. Pender
 
 ,
 
 243 N.C. App. 142
 
 , 149,
 
 776 S.E.2d 352
 
 , 358 (2015) (citation omitted).
 

 Defendant argues the State did not prove Inspector Wall was a "person in charge" for purposes of the trespass offense.
 

 *875
 

 N.C. Gen. Stat. § 14-159.13
 
 . Neither the statute itself nor prior caselaw address the definition of a "person in charge."
 
 N.C. Gen. Stat. § 14-159.13
 
 . "Charge" is defined as "to entrust with responsibilities or duties." Black's Law Dictionary 282 (10
 
 th
 
 ed. 2014). Defendant has failed to argue how a deficiency in additional evidence as to whether Inspector Wall was "person in charge" resulted in a manifest injustice to herself. Further, Defendant has failed to argue how this purported error prevented the proper preparation of her own defense against the crime charged. Thus, we are unpersuaded to invoke Rule 2 to address this issue.
 

 iii. Lack of Implied Consent
 

 Defendant next asserts the trial court erred by denying Defendant's motion to dismiss the charge of second degree trespass, based on Defendant's lack of implied consent to be on the premises.
 

 Under Section 14-159.13, generally, those who enter premises open to the public have the implied consent of the owner to remain.
 
 State v. Marcoplos
 
 ,
 
 154 N.C. App. 581
 
 , 582,
 
 572 S.E.2d 820
 
 , 821 (2002) ;
 
 N.C. Gen. Stat. § 14-159.13
 
 (2017). "If, however, the premises are open to the public, the occupants of those premises have the implied consent of the owner/lessee/possessor to be on the premises, and that consent can be revoked only upon some showing the occupants have committed acts sufficient to render the implied consent void."
 

 Id.
 

 at 582-583
 
 ,
 
 572 S.E.2d at 821-822
 
 (citation omitted). "[O]ne who lawfully enters a place may be subject to conviction for trespass if he or she remains after being asked to leave by someone with authority."
 
 Id.
 
 at 583,
 
 572 S.E.2d at
 
 821-822 ;
 
 see also
 

 N.C. Gen. Stat. § 14-159.13
 
 .
 

 *367
 
 The evidence at trial shows Defendant raised her voice and began swearing at the DMV employee who possessed her license. When Inspector Wall told Defendant to leave, he picked up Defendant's license and attempted to escort her out of the building. By telling Defendant to leave the office, Inspector Wall revoked Defendant's implied consent to remain. Inspector Wall's possession of Defendant's license did not prevent her from leaving the building. Inspector Wall picked up Defendant's license from Ms. Overby. Inspector Wall attempted to escort Defendant off the property with all of her possessions. Defendant's refusal to leave the premises and becoming belligerent with the DMV employees and Inspector Wall prevented her from retrieving her license. Further, Inspector Wall was established at trial as someone who fit the definition of a lawful occupant and authorized person. Accordingly we affirm the trial court's denial of the motion to dismiss.
 

 C. Plain Error, Jury Instruction
 

 Finally, Defendant asserts the trial court committed plain error in its jury instruction on second-degree trespass. Defendant asserts the trial court committed plain error by instructing the jury on additional theories of second-degree trespass not alleged in the indictment. Defendant argues the evidence showing Inspector Wall was a "person in charge of the premises" is insufficient to support a conviction on that theory alone. Defendant did not object and this argument was not presented at trial. However, because we hold the inclusion of the additional words is not erroneous, we do not need to employ a plain error analysis.
 

 North Carolina Pattern Jury Instruction 214.31A describes four potential persons who can notify a defendant not to enter or remain on the premises: the owner, a person in charge of the premises, a lawful occupant, an authorized person. N.C.P.I. Crim. 214.31A (2015). Defendant was indicted for "remain[ing] on the premises ... after having been notified not to remain there by a person in charge of the premises." In the case
 
 sub judice
 
 , the indictment specifically alleged Inspector Wall was a "person in charge" of the premises. However, the trial court instructed the jury to find Defendant guilty if she was told not to remain on the premises "by a person in charge of the premises, a lawful occupant or another authorized person."
 

 However, the additional words "a lawful occupant, or another authorized person" do not constitute other disjunctive theories included in the jury instructions. Examining the statute's language, it is apparent
 
 *876
 
 the list of persons is merely a disjunctive list of descriptors, not additional theories.
 

 *368
 
 In the construction of statutes, the
 
 ejusdem generis
 
 rule is that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated.
 

 State v. Lee
 
 ,
 
 277 N.C. 242
 
 , 244,
 
 176 S.E.2d 772
 
 , 774 (1970) (citation omitted);
 
 see also
 

 United States v. Aguilar
 
 ,
 
 515 U.S. 593
 
 , 615-16,
 
 115 S.Ct. 2357
 
 , 2370,
 
 132 L.Ed.2d 520
 
 , 538 (1995). An associative canon of statutory construction,
 
 noscitur a sociis
 
 , teaches "associated words explain and limit each other. When a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found and the meaning of the terms which are associated with it."
 
 City of Winston v. Beeson
 
 ,
 
 135 N.C. 271
 
 , 280,
 
 47 S.E. 457
 
 , 460 (1904).
 
 [1]
 

 Here, the notification element of second-degree trespass "by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person" specifies a list appropriate to interpret using
 
 ejusdem generis
 
 and
 
 noscitur a sociis
 
 .
 
 See
 

 N.C. Gen. Stat. § 14-159.13
 
 ;
 
 Lee
 
 ,
 
 277 N.C. at 244
 
 ,
 
 176 S.E.2d at 774
 
 . The descriptors define persons who could notify Defendant they were no longer authorized to remain on the premises, not additional theories. From the plain language of the statute, we cannot determine any substantive differences between the descriptors included in the jury instructions not alleged in the indictment. Accordingly, the trial court did not err in its jury instructions on second-degree trespass.
 

 For the reasons discussed above, we hold the trial court did not err in its instructions to the jury on the charge of second-degree trespass by including other descriptors from the pattern jury instructions and in Section 14-159.13.
 

 D. Ineffective Assistance of Counsel
 

 Defendant argues she received ineffective assistance of counsel, violating her Sixth Amendment rights and Article 1, Section 23 of the North Carolina Constitution. Specifically, Defendant contends her counsel was ineffective because her counsel (1) explicitly consented to the jury instruction amounting to a misstatement of the law regarding
 
 *369
 
 the specific duty Inspector Wall was discharging when he arrested Defendant; and (2) failed to argue there was a fatal variance between the allegation in the indictment and the evidence presented.
 

 Article I, Section 23 of the North Carolina Constitution and the Sixth Amendment of the United States Constitution guarantee criminal defendants the right to effective assistance of counsel at trial.
 
 See
 
 N.C. Const. art. I § 23 ; U.S. Const., Amend. VI ;
 
 see also
 

 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561-62,
 
 324 S.E.2d 241
 
 , 247-48 (1985). "[W]e expressly adopt the test set out in
 
 Strickland v. Washington
 
 as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution."
 
 Braswell
 
 ,
 
 312 N.C. at 562-63
 
 ,
 
 324 S.E.2d at
 
 248 ;
 
 see
 

 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984).
 

 In order to prevail on a claim of ineffective assistance of counsel ("IAC"), a "defendant must first show that his defense counsel's performance was deficient and, second, that counsel's deficient performance prejudiced his defense."
 
 State v. Thompson
 
 ,
 
 359 N.C. 77
 
 , 115,
 
 604 S.E.2d 850
 
 , 876 (2004) ;
 
 see also
 

 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . "Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness."
 

 *877
 

 Thompson
 
 ,
 
 359 N.C. at 115
 
 ,
 
 604 S.E.2d at 876
 
 (citations and internal quotation marks omitted).
 

 [T]o establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 

 Thompson
 
 ,
 
 359 N.C. at 115
 
 ,
 
 604 S.E.2d at 876
 
 (citations and internal quotation marks omitted). When our Court reviews an IAC claim, "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear."
 
 State v. Fletcher
 
 ,
 
 354 N.C. 455
 
 , 482,
 
 555 S.E.2d 534
 
 , 551 (2001). "Because of the difficulties inherent in determining if counsel's conduct was within reasonable standards, a court must indulge a strong presumption that counsel's conduct falls within the broad range of what is reasonable assistance."
 
 State v. Fisher
 
 ,
 
 318 N.C. 512
 
 , 532,
 
 350 S.E.2d 334
 
 , 346 (1986) (citing
 
 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed.2d at
 
 694 ).
 

 Defendant asserts trial counsel explicitly consented to the jury instruction at the charge conference regarding the specific duty Inspector Wall was discharging when he arrested Defendant, and Defendant was
 
 *370
 
 prejudiced by trial counsel's consent. Defendant contends the trial court's instruction, "[m]aking an arrest for criminal conduct, which occurs in his presence, is a duty of a Division of Motor Vehicles agent" is an erroneous statement of the law, and thus, there is a reasonable probability the jury would have reached a different result.
 

 During the charge conference, Defendant's trial counsel discussed the correct language at length with the State and the trial court concerning the language used to define the specific duty Inspector Wall was attempting to discharge during Defendant's arrest. Defendant's trial counsel argued the trial court should not define a specific duty or impute a duty to Inspector Wall because whether he had a specific duty was a separate question of fact for the jury to decide. The record indicates trial counsel did object to one portion of the language in question:
 

 THE COURT: All right. I would be inclined to add that language out of abundance of caution, making an arrest for criminal conduct which occurs in his presence or preventing criminal conduct in a Division of Motor Vehicles office are duties of a DMV agent. State want to be heard any further about that?
 

 MR. PAGE: No, your Honor.
 

 THE COURT: Defense want to be heard any further?
 

 MR. KEY: Just note my exception to the second aspect of it.
 

 THE COURT: That's noted and overruled. All right.
 

 At trial, counsel argued several times Inspector Wall did not have the authority to arrest Defendant. Defense counsel specifically questioned Inspector Wall about the power of a DMV inspector to arrest.
 

 Defendant also argues her trial counsel should have argued the existence of a fatal variance between the allegation of second-degree trespass in the indictment and the evidence presented at trial. Because we previously held above the trial court did not err in its jury instructions and there was no fatal variance, both did not constitute a misstatement of the law or errors by counsel. Therefore, we hold Defendant's IAC claims are without merit, and Defendant did not receive ineffective assistance of counsel.
 

 *371
 

 V. Conclusion
 

 For the reasons set out in our opinion above, we find no error committed at trial and affirm the conviction of Defendant for resisting a public officer and trespass in the second degree.
 

 NO ERROR.
 

 Judges BRYANT and ARROWOOD concur.
 

 [1]
 

 This case was reprinted in 1924, and paginated as
 
 135 N.C. 192
 
 , 198 (Spring Term, 1904).