IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-458

No. COA20-100

Filed 7 September 2021

Union County, Nos. 18 CRS 870, 52381, 52383

STATE OF NORTH CAROLINA

v.

JODY ALLEN TARLTON, Defendant.

Appeal by defendant from judgment entered 7 August 2019 by Judge Kevin M. Bridges in Superior Court, Union County. Heard in the Court of Appeals 13 April 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Alexander H. Ward, for the State.*

*Jarvis John Edgerton, IV, for defendant.*

STROUD, Chief Judge.

¶ 1 Jody Allen Tarlton ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of possession with intent to sell and deliver methamphetamine, possession of heroin, misdemeanor possession of marijuana, possession of drug paraphernalia, resisting a public officer, and attaining habitual felon status. Defendant argues that the trial court erred in denying his motion to dismiss the charge of resisting a public officer because there was a fatal variance

between the indictment and the evidence introduced at trial. Because the evidence at trial conformed to the allegations in the indictment as to the essential elements of the crime of resisting a public officer, we conclude there was no error.

## I.    Background

The State's evidence tended to show that on 15 May 2018 at approximately 10:00 A.M., Detective David Todd Haigler of the Monroe Police Department received a phone call from a confidential informant. The confidential informant said Defendant—a white male carrying a "blue/black/gray camo in color book bag" and wearing blue jeans and a hat—would be at the Citgo Station on East Roosevelt Boulevard with "a significant amount of methamphetamine in [his] book bag." Along with Sergeant Nick Brummer and Officer Travis Furr, Detective Haigler drove to the Citgo Station, where he "observed a white male matching the description . . . [who] had in his possession a camo book bag that was also described to [him] by the confidential informant." For approximately twenty minutes, the officers watched Defendant as he stood outside the store.

When Sergeant Brummer and Detective Haigler got out of their vehicles and approached Defendant, he was "sitting down[;] he had a bag with him[;] and he had a knife on his side." Sergeant Brummer testified that he asked Defendant "if he had anything on him that [the officers] needed to know about and [Defendant] said just a little bud in his pocket." After asking Defendant to turn around and place his hands

on the wall, Detective Haigler retrieved marijuana from Defendant's pocket. At that point, Officer Furr testified that he "grabbed the camouflage bag that was laying in between [Defendant's] feet on the ground" and carried it to Detective Haigler's vehicle.

¶ 4        After taking Defendant's knife, Sergeant Brummer asked Defendant if he could search his book bag. Defendant explained that "he got the book bag from a male subject in the parking lot" and pointed toward the parking lot. Detective Haigler testified that when he looked in the direction that Defendant was pointing, Defendant "took off running." Upon hearing Sergeant Brummer yell "get him," Officer Furr left Defendant's book bag on the police vehicle and joined Detective Haigler and Sergeant Brummer's foot pursuit of Defendant. They apprehended Defendant within one minute.

¶ 5        At trial, Defendant stipulated that his book bag contained 11.49 grams of methamphetamine and less than .1 grams of heroin. At the close of the State's evidence, Defendant moved to dismiss and "grant acquittals to [Defendant] on all the charges with which he's currently related, recognizing the State has dismissed two of those from the very start." The trial court denied the motion. Defendant renewed his motion to dismiss the charges at the close of all the evidence, and the trial court again denied the motion. The jury returned verdicts finding Defendant guilty of all charges. Defendant was sentenced to two consecutive judgments and commitments

for a total minimum of 178 months and a total maximum of 238 months imprisonment. Defendant appeals.

## II. Analysis

¶ 6    Defendant argues that "the trial court erred when it denied Defendant's motion to dismiss the charge for resisting a public office because there was a fatal variance between the indictment allegation and the evidence." (Original in all caps.)

### A. Preservation

¶ 7    The State argues that Defendant did not preserve his fatal variance argument for appellate review because "[t]his Court has repeatedly held that in order to preserve a fatal variance argument for appellate review, a defendant must specifically state at trial that a fatal variance is the basis for his motion to dismiss." Defendant, citing *State v. Smith*, 375 N.C. 224, 846 S.E.2d 492 (2020), asserts that his "fatal variance argument here is preserved for normal appellate review upon his timely motions to dismiss all charges."

¶ 8    In *State v. Smith*, 375 N.C. 224, 846 S.E.2d 492, the defendant was charged with two counts of engaging in sexual activity with a student in violation of North Carolina General Statute § 14-27.7. *Id.* at 226, 846 S.E.2d at 493. At trial, the defendant moved to dismiss the charge based on insufficient evidence of one element of the crime—whether sexual activity occurred—and the trial court denied the motion. *Id.* at 226–27, 846 S.E.2d at 493. In his appeal to this Court, the defendant

argued the trial court erred in denying his motion to dismiss because (1) "the evidence at trial did not establish that he was a 'teacher' within the meaning of N.C.G.S. § 14-27.7(b)" or, in the alternative, (2) "there was a fatal variance between the indictment and proof at trial since the indictment alleged defendant was a 'teacher,' but his status as a substitute teacher made him 'school personnel' under section 14-27.7(b)." *Id.* at 227–28, 846 S.E.2d at 494. This Court held that the defendant failed to preserve these arguments for appellate review because the insufficient evidence argument at trial was limited to a single element of the crime, and the fatal variance argument was not presented to the trial court. *Id.* at 228, 846 S.E.2d at 494.

¶ 9     On appeal, the Supreme Court acknowledged this Court's opinion was filed before the Supreme Court's opinion in *State v. Golder*, 374 N.C. 238, 839 S.E.2d 782 (2020), which "addressed the specific issue of when a motion to dismiss preserves all sufficiency of the evidence issues for appellate review." *Id.* at 228–29, 846 S.E.2d at 494. In *Golder*, the Supreme Court "held that 'Rule 10(a)(3) provides that a defendant preserves all insufficiency of the evidence issues for appellate review simply by making a motion to dismiss the action at the proper time.'" *Id.* at 229, 846 S.E.2d at 494 (quoting *Golder*, 374 N.C. at 246, 839 S.E.2d at 788). Based on its holding in *Golder*, the Court in *Smith* explained, "[b]ecause defendant here made a general motion to dismiss at the appropriate time and renewed that motion to dismiss at the close of all the evidence, his motion properly preserved all sufficiency of the evidence

issues." *Id.* at 229, 846 S.E.2d at 494. The Supreme Court did not conclusively determine whether the defendant's fatal variance argument was preserved for appellate review; the Court stated, "assuming without deciding that defendant's fatal variance argument was preserved, defendant's argument would not prevail for the same reasoning." *Id.* at 231, 846 S.E.2d at 496.

¶ 10    Following *Golder* and *Smith*, this Court recently addressed whether a fatal variance argument was preserved for appellate review:

> Although *Golder* did not address this specific question, our Court has noted, in light of *Golder*: "any fatal variance argument is, essentially, an argument regarding the sufficiency of the State's evidence." We further reasoned: "our Supreme Court made clear in *Golder* that 'moving to dismiss at the proper time . . . preserves all issues related to the sufficiency of the evidence for appellate review.'" Specifically, in *Gettleman* we determined the defendant failed to preserve an argument that the jury instructions and indictment in that case created a fatal variance precisely because the Defendant failed to move to dismiss the charge in question. Here, unlike in *Gettleman*, Defendant did timely move to dismiss all charges, and thus, under the rationale of *Gettleman*, it would appear Defendant did preserve this argument. Without so deciding, and for purposes of review of this case, we employ de novo review.

*State v. Brantley-Phillips*, ___ N.C. App. ___, No. 2021-NCCOA-307, ¶ 22 (citations and brackets omitted) (quoting *State v. Gettleman*, ___ N.C. App. ___, ___, S.E.2d 447, 454 (2020)).

¶ 11    Here, Defendant moved to dismiss his charges at the close of the State's

evidence and renewed the motion at the close of all the evidence. Therefore, as in *Brantley-Phillips*, "it would appear Defendant did preserve this argument" but, "[w]ithout so deciding, and for purposes of review of this case, we employ de novo review." *Id.*

## B. Fatal Variance

Defendant argues there was a fatal variance between the indictment charging him with resisting a public officer and the evidence presented at trial. Specifically, the indictment alleged that at the time of Defendant's resistance, Detective Haigler was "attempting to take the defendant into custody for processing narcotics" but the evidence at trial "only showed that Defendant ran from officers, including Haigler, after a small amount of marijuana was seized from his person." Defendant asserts he "is entitled to have his resisting conviction vacated because the State tendered no evidence supporting its material indictment allegation that Defendant resisted an arrest for processing narcotics."

> A motion to dismiss for a variance is in order when the prosecution fails to offer sufficient evidence the defendant committed the offense charged. A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged.
> In order to prevail on such a motion, the defendant must show a fatal variance between the offense charged and the proof as to the gist of the offense.

*State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (citations, quotation

marks, and brackets omitted). "In order for a variance to warrant reversal, the variance must be material. A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged." *State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002) (citations omitted).

> The determination of whether a fatal variance exists turns upon two policy concerns, namely, (1) [e]nsuring that the defendant is able to prepare his defense against the crime with which he is charged and (2) protecting the defendant from another prosecution for the same incident. However, *a variance does not require reversal unless the defendant is prejudiced as a result.*

*State v. Glidewell*, 255 N.C. App. 110, 113, 804 S.E.2d 228, 232 (2017) (emphasis added) (citations, quotation marks, brackets, and ellipses omitted).

¶ 13        Defendant was charged with resisting, delaying, or obstructing a public officer under North Carolina General Statute § 14-223, which makes it a misdemeanor to "willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office[.]" N.C. Gen. Stat. § 14-223 (2019). "[O]ur Supreme Court has determined a warrant or bill of indictment must identify the officer—the person alleged to have been resisted, delayed or obstructed—by name; *indicate the official duty he was discharging or attempting to discharge*; and should point out, generally, the manner in which the defendant is charged with having resisted, delayed, or obstructed the officer." *State v. Nickens*, 262 N.C. App. 353, 360, 821 S.E.2d 864, 871 (2018) (emphasis added) (citations omitted). Here, the

indictment for resisting a public officer alleged that Defendant "unlawfully and willfully did":

> resist, delay and obstruct Detective D. Haigler, a public officer holding the office of Monroe Police Department, by fleeing on foot to avoid arrest. At the time, the officer was discharging and attempting to discharge a duty of his office, attempting to take the defendant into custody for processing narcotics.

¶ 14 According to Defendant, the "basis for the arrest, as alleged in the indictment, is a material element of the charge[,]" and, therefore, any variance in the basis for the arrest between the evidence at trial and the allegation in the indictment would be material and fatal. However, Defendant does not cite, and our research has not revealed, *any* case that holds the specific basis for arrest is an essential element of the charge of resisting a public officer. It is well-established that an essential element of the charge of resisting a public officer is the identification of the official duty an officer was discharging or attempting to discharge at the time of a defendant's resistance. *See id.*; *State v. Swift*, 105 N.C. App. 550, 553, 414 S.E.2d 65, 67 (1992). Indeed, this Court has explained that "[i]n the offense of resisting an officer, the *resisting* of the public officer in the *performance* of some duty is the primary conduct proscribed by that statute and *the particular duty that the officer is performing while being resisted is of paramount importance and is very material to the preparation of the defendant's defense*[.]" *State v. Kirby*, 15 N.C. App. 480, 488, 190 S.E.2d 320, 325

(1972) (third emphasis added).

¶ 15        Here, the indictment alleged that at the time of Defendant's resistance, Detective Haigler was engaged in the duty of "attempting to take the defendant into custody for processing narcotics." The identification of Detective Haigler's official duty—attempting to take Defendant into custody—is an essential element of resisting a public officer. *See Nickens*, 262 N.C. App. at 360, 821 S.E.2d at 871; *Kirby*, 15 N.C. App. at 488, 190 S.E.2d at 325. At trial, law enforcement officers testified that before his arrest, Defendant admitted to having "just a little bud in his pocket," which the officers subsequently retrieved. Defendant does not contend that the officers acted unlawfully in attempting to take him into custody or that his arrest was unlawful. The State presented evidence that Defendant's arrest was lawful, as Detective Haigler had probable cause to arrest Defendant for possession of marijuana when Defendant started to run away. Therefore, the allegation in the indictment which identified Detective Haigler's official duty as attempting to take Defendant into custody conformed to the evidence actually presented at trial.

¶ 16        This Court has explained:

> The bill is complete without evidentiary matters descriptive of the manner and means by which the offense was committed. A verdict of guilty, or not guilty, is only as to the offense charged, not of surplus or evidential matters alleged. *An averment in an indictment or warrant not necessary in charging the offense may be treated as exceeding what is requisite and should be disregarded.* We

> find it unnecessary to pass upon the effect of the evidential matters charged, therefore. *The evidence corresponded with the allegations of the indictment which were essential and material to charge the offense.* The judge in turn did an adequate job of clarifying the issues, and of eliminating extraneous matters, as was his duty.

*State v. Lewis*, 58 N.C. App. 348, 354, 293 S.E.2d 638, 642 (1982) (emphasis added) (citations and quotation marks committed). Here, the specific basis for Defendant's arrest was "[a]n averment . . . exceeding what is requisite and should be disregarded." *Id.* It is immaterial whether the arrest was based on processing narcotics or possession of marijuana because the State's evidence demonstrated that at the time of Defendant's resistance, Detective Haigler was *lawfully* attempting to arrest Defendant. Defendant does not argue that his arrest was not lawful because there was no probable cause to arrest him for possession of marijuana. The fact that the evidence at trial did not show that Detective Haigler arrested Defendant for the specific basis of processing narcotics did not hinder Defendant from preparing a defense nor did it leave him vulnerable to the same charges being brought against him. Defendant also does not argue that he was prejudiced because the evidence at trial tended to show that he was arrested for possession of marijuana. During the charge conference, Defendant asked the trial court to change the jury instruction for resisting a public officer to reflect that the official duty "was attempting to take the Defendant into custody for possessing controlled substances, to wit, marijuana, which

is a duty of a detective." Defendant rejected the court's proposal to instruct the jury that Defendant was taken into custody for "possessing a controlled substance" and specifically requested the court "put marijuana in" the instruction because "that's consistent with the testimony of both officers."

¶ 17        Defendant asserts this case "is analogous" to *State v. Carter*, 237 N.C. App. 274, 765 S.E.2d 56 (2014). In *Carter*, after a confidential source made a controlled purchase of drugs at the defendant's house, deputies obtained a search warrant for the defendant's person and house. *Id.* at 276, 765 S.E.2d at 59. On the way to the defendant's house to execute the search warrant, a deputy observed the defendant in the passenger seat of a passing car and initiated a stop. *Id.* The deputy approached the passenger side of the car, informed the defendant he was the named subject of the search warrant, and ordered the defendant to step out of the car and submit to a search. *Id.* at 276–77, 765 S.E.2d at 59. When the defendant refused to exit the car, the deputy radioed for backup and informed the defendant he was under arrest. *Id.* at 277, 765 S.E.2d at 59. The defendant was subsequently charged and convicted of resisting a public officer and appealed. *Id.* at 277, 765 S.E.2d at 59.

¶ 18        On appeal, the defendant argued that the trial court erred in denying his motion to dismiss the charge of resisting a public officer because there was insufficient evidence that the deputy was discharging or attempting to discharge a duty of his office—executing a search warrant—in a lawful manner at the time the

defendant resisted. *Id.* at 276, 765 S.E.2d at 58. This Court agreed with the defendant, held that the deputy violated North Carolina General Statute § 15A–252 (providing the statutory requirements for an officer intending to execute a search warrant), and "[c]onsequently, [the deputy] was not lawfully executing the warrant, and [the] defendant had a right to resist him." *Id.* at 280, 765 S.E.2d at 61. Explaining "[t]he basis for the charge of resisting a public officer was defendant's refusal to get out of the car and submit to a search of his person[,]" this Court held that "the legality of the stop has no bearing on the legality of Investigator Burns' conduct in executing the search warrant." *Id.*

¶ 19        Defendant asserts "[i]n the instant case, just as in *Carter*, the State's evidence is insufficient to show Defendant violated the particular offense the State alleged in its indictment." However, *Carter* is inapposite, and Defendant's characterization is misleading. First, there was no fatal variance or other indictment issue raised in *Carter*. The term "indictment" is not referenced at all in the *Carter* decision. In *Carter,* we addressed the sufficiency of the evidence pertaining to the lawfulness of the official duty being performed—the execution of the search warrant—which is an essential element of the crime of resisting a public officer. Here, however, Defendant does not challenge the sufficiency of the evidence regarding the legality of the official duty being performed—attempting to take the defendant into custody—but instead argues there was insufficient evidence he was arrested *for processing narcotics*.

However, as discussed above, the basis of the arrest is "an averment unnecessary to charge the offense," which "may be disregarded as inconsequential surplusage." *State v. Grady*, 136 N.C. App. 394, 396–97, 524 S.E.2d 75, 77 (2000). As a result, there was no fatal variance between the indictment and the evidence presented, as "[t]he evidence corresponded with the allegations of the indictment which were essential and material to charge the offense." *Lewis*, 58 N.C. App. at 354, 293 S.E.2d at 642.

### III. Conclusion

We hold that the evidence at trial conformed to the allegations in the indictment as to the essential elements of the crime of resisting a public officer.

NO ERROR.

Judges ARROWOOD and JACKSON concur.