**STATE v. MARCOPLOS**

[154 N.C. App. 581 (2002)]

STATE OF NORTH CAROLINA v. MARK W. MARCOPLOS, NANCY KATHERINE WOODS, PASCAL L. PITTS, LAURA WINBUSH VANDERBECK, JAMES EDWIN WARREN, AND RUTH C. ZALPH

No. COA01-1518

(Filed 17 December 2002)

**1. Trespass— second-degree—refusal to leave privately owned property held open to public for legitimate purposes only**

The trial court did not err by convicting defendants of second-degree trespass after defendants organized a group of people, after contacting the police, to go to CP&L headquarters to demand a meeting with the CEO in order to get him to sign a document agreeing to safety hearings and defendants were told three or more times that they could not see the CEO and were asked to leave but refused and were arrested, because: (1) a person may commit second-degree trespass by refusing to leave privately owned property, held open to the public for legitimate purposes only, once he no longer as a legitimate purpose on the premises and is asked to leave by a proper authority; and (2) although defendants were peaceful, the evidence sufficiently supported a finding that their continued presence disrupted the business atmosphere of the building.

**2. Criminal Law— findings of fact—document given to court clerk without defendant's knowledge—harmless error**

Although the trial court erred in a second-degree trespass case by making findings of fact based upon a document given to the court clerk by the prosecution without informing defense counsel of its existence or allowing defense counsel to respond, it was harmless error in light of the overwhelming evidence in this case.

Judge GREENE dissenting.

Appeal by defendants from judgments dated 9 August 2001 by Judge J.B. Allen, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 17 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for the State.*

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher, and George Hausen, for defendant appellants.*

WYNN, Judge.

Defendants Mark W. Marcoplos, Nancy Katherine Woods, Pascal L. Pitts, Laura Winbush Vanderbeck, James Edwin Warren, and Ruth C. Zalph appeal from convictions of second-degree trespass. On appeal, we uphold defendants' convictions.

The State's evidence tends to show defendants entered during business hours the lobby of a building located at 411 Fayetteville Street Mall in Raleigh, known as the CP&L Building. Their stated intent was to address Carolina Power & Light, Inc.'s (CP&L) chief executive officer, William Cavanaugh, to protest the lack of open hearings about CP&L's storage of used nuclear fuel at the Shearon Harris nuclear power plant. The lobby of the CP&L Building is open during business hours in order to allow for public access to various stores and restaurants located contiguous to the lobby as well as CP&L offices located on other floors of the building. Upon entering the lobby of the CP&L Building, Russ Sweeney, Manager of Investigations and Physical Security for Progress Energy Service Company, Inc., the company that provides security for CP&L, accompanied by Raleigh police officers stopped defendants and asked defendants to leave after informing them the CEO was unavailable. Defendants refused to leave the lobby and were subsequently arrested.

At the close of the State's evidence and at the close of all evidence, defendants moved to dismiss the charges of second degree trespass. From the trial court's denial of those motions, defendants appeal.

---

[1] The issue on appeal is whether a person may commit second degree trespass by refusing to leave privately owned property, held open to the public for legitimate purposes only, once he no longer has a legitimate purpose on the premises and is asked to leave by a proper authority. We answer yes, and therefore, uphold the defendants' convictions for second degree trespass.

As a general proposition, one is guilty of second degree trespass "if without authorization, [he] enters or *remains* on [the] premises of another: (1) after he has been notified not to enter or *remain* there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person." N.C. Gen. Stat. § 14-159.13 (2001). If, however, the premises are open to the public, the occupants of those premises have the implied consent of the

owner/lessee/possessor to be on the premises, and that consent can be revoked only upon some showing the occupants have committed acts sufficient to render the implied consent void. *See State v. Winston*, 45 N.C. App. 99, 102, 262 S.E.2d 331, 333 (1980) (motion to dismiss unlawful entering charge should be granted where the defendant entered clerk's office, an office open to the public, during regular business hours and evidence failed to disclose the defendant, after entry, committed acts sufficient to render implied consent void *ab initio*). Under N.C. Gen. Stat. § 14-159.13, one who lawfully enters a place may be subject to conviction for trespass if he or she remains after being asked to leave by someone with authority. It follows that one who remains on privately owned property, without a legitimate purpose, after being asked to leave by someone with authority, may be convicted of second-degree trespass.[1]

The Supreme Court of Maine reached a similar conclusion in *State of Maine v. Armen*, 537 A.2d 1143 (1988) where the defendant as part of the Maine Coalition for Peace and Justice in Central America sought an appointment with United States Representative Olympia Snowe. After not receiving an appointment, the defendant went to Representative Snowe's district office, and refused to leave the office if significant progress was not made towards arranging a meeting. The defendant had earlier called the police because he anticipated the police may be called at the office. However, defendant still refused to leave after speaking with the administrative assistant to Representative Snowe in Washington, D.C. because he was reluctant to leave without some indication of a meeting in the future. Defendant was eventually arrested for trespass. On appeal, the defendant argued that he had further business to conduct at the district office, although he never conveyed those intentions to the district office staff. In his appellate argument, the defendant contended that "an order to leave property open to the public is lawful only when an authorized person has some justification for requesting removal [and that] because his actions were peaceful, [the defendant] contended there was no justification for his removal. The Supreme Judicial Court of Maine held:

> Because of the public invitation, [defendant's] initial entry was not a trespass. Upon completion of his legitimate business, [defendant] was not privileged to remain. [Defendant] argues,

---

1. We note further that other examples of conduct that may void implied consent include loitering, non-permitted solicitation, creating a public disturbance, public drunkenness, or other disorderly or criminal conduct.

nevertheless, that Higgins arbitrarily ordered him to leave before he had the opportunity to complete his business. The record indicates and [defendant] concedes that he had not informed Higgins that he had additional matters to discuss. Because the evidence viewed in the light most favorable to the State supports a finding that [defendant] had completed his business and that his continued presence interfered with the operation of the district office, we conclude that the District Court was not compelled to entertain a reasonable doubt as to the lawfulness of Higgins' order.

537 A.2d at 1146.

Similarly, in this case, the defendants organized a group of people, after contacting the police, to go to the CP&L headquarters to demand a meeting with the CEO in order to get him to sign a document agreeing to safety hearings. After being met by a company representative outside of the building who informed them he would hear their requests, would accept any documents, and that they would not be able to meet with the CEO, a group of approximately 25 demonstrators went inside of the Progress Energy lobby. Also inside of the lobby were 12 Raleigh Police Officers, whom the defendants' organization had contacted prior to going to the building. The defendants separated themselves from the group and were met by a Progress Energy security officer. They requested to see the CEO. After being told they could not meet with the CEO and were asked to leave, they repeated their demand. Ultimately, the defendants were told three more times, once by the security officer and twice by the police sergeant, that they could not see the CEO and were asked to leave. They refused and were arrested.

On appeal, the defendants argue that because they were peaceful and were in an area held open to the public, CP&L and Progress Energy officials did not have sufficient justification for asking them to leave. However, the uncontroverted evidence shows Hawthorne Associates leased the entire building, including the lobby, to Progress Energy Services, L.L.C. and its subsidiary, CP&L. Although the lobby contained several businesses, CP&L and Progress Energy retained control over the lobby and held the lobby open to the public for certain legitimate purposes, which included patronizing the businesses located in the lobby. Assuming the defendants had implied consent to enter the lobby area held open to the public,[2] once they were made

---

2. At trial, several defendants testified that their sole purpose was to demand a meeting with the CEO, not to patronize the other businesses in the lobby area. Consent, whether express or implied, must be based upon a good faith reasonable belief that

aware they could not meet with the CEO and because they did not have any intention of patronizing the other businesses, the defendants no longer had a legitimate purpose for being in the lobby. Although the defendants were peaceful, the evidence sufficiently supports a finding that their continued presence disrupted the business atmosphere of the building. Indeed, there were 25 demonstrators along with at least 12 police officers in the middle of a small lobby area where other people were trying to come in and go out of the building.

In sum, we hold one with lawful authority may order a person to leave the premises of a privately owned business held open to the public when that person no longer has a legitimate purpose for being upon the premises. *See State v. Birkhead*, 48 N.C. App. 575, 269 S.E.2d 314 (1980); *State v. Clyburn*, 247 N.C. 455, 101 S.E.2d 295 (1958); *see also Smith v. State of Florida*, 778 So.2d 329, 330 (Fla. Dist. Ct. App. 2000) (where although the public had an invitation to shop a privately owned convenience store because it was quasi public property, the owner could still limit or revoke the invitation to come on his land); *People v. Nunez*, 431 N.Y.S.2d 650, 653 (N.Y. Crim. Ct. 1980) (where the court stated "one can bar an individual from a quasi-private building, such as a department store, so long as the exclusion is not founded on race, creed, color, or national origin [and that] to bar a person from a public building or facility, that is, one 'maintained by the public for use by the public on public affairs and business', there must be a greater showing than mere presence in violation of an order not to enter); *People v. Marino*, 515 N.Y.S.2d 162, 165-66 (N.Y. Justice Ct. 1986) (stating "privately owned premises which provide public accommodations may exclude individuals provided the exclusion is not based upon a violation of a civil right, such as race, color, creed, or national origin). We, therefore, conclude that the evidence presented at trial was sufficient to support defendants' convictions for second-degree trespass.

[2] Defendants also argue on appeal that the prosecutor improperly communicated *ex parte* with the trial judge by giving a document to the court clerk, who in turn, gave the document to the judge.[3] Defense

they were authorized to enter said premises. *See State v. Upchurch*, 332 N.C. 439, 458-59, 421 S.E.2d 577, 588 (1992); *see also State v. Tolley*, 30 N.C. App. 213, 226 S.E.2d 672 (1976).

3. After the trial ended, prior to sentencing, defense counsel was allowed to review the document, with the names Larry Macer, CP&L's associate general counsel, and Kenneth Poston, CP&L's senior public relations officer, at the top. Defense counsel asked that the document be included in the record, that the record reflect the occupa-

counsel never saw the document and did not know the judge received the document until he ruled upon the necessity defense. As part of the order, the court found:

> Number 5: . . . The Court will note, and the Clerk handed me this Internet yesterday, that a one—and I don't know who Kenneth Poston is—but a one Kenneth Poston caused a notice to be placed on the Internet Tuesday, July 31st, 2001, announcing these trials scheduled in the Wake County Superior Court, encouraging people to come to court and support the defendants who were arrested and demanding for nuclear safety. In the Internet message, it was stated that attorneys Stewart Fisher and attorney George Hausen planned to utilize a quote, necessity defense, end of quote.

> Number 7: Also in the Internet message, it was stated that a renowned nuclear expert, a one David Lochbaum, would testify as to the risk of nuclear waste pool, fires, and terrorism at the Shearon Harris plant.

> Number 8: The Internet message stated that there would be carpooling from Durham to Wake County Courthouse for this trial.

Although the trial judge made these findings of fact, none of this information was presented by the prosecution or defendants during their arguments as to the availability of the necessity defense. It appears from the record that the trial judge made findings of fact based upon the document given to the clerk by the prosecution without informing defense counsel of its existence or allowing defense counsel to respond. Moreover, during sentencing, the trial judge stated, referring to the defendants,

> I have no fault whatsoever with your good intentions. In fact, you are to be admired for your deep concern about your safety and the safety of your fellow citizens. But as I have already indicated, I do fault you on your judgments. You wanted to be arrested. You wanted to come into this Court and put on a show. You wanted to do this because you thought it would help your cause, and in my opinion you have hurt your cause.

---

tion of the two men mentioned in the document, and stated for the record their feeling that it was inappropriate for the CP&L officials to provide the document to the Court outside defendants presence. The prosecutor informed the court that he gave the document to the clerk when the clerk asked what case was being tried without the intention of the document being given to the judge.

STATE v. MARCOPLOS

[154 N.C. App. 581 (2002)]

These statements make it clear that the trial judge considered the contents of the document handed to the Court by the prosecutor.

Under Rule 3.5(a)(3) of the North Carolina Rules of Professional Conduct: "A lawyer shall not communicate *ex parte* with a judge or other official except: (i) in the course of official proceedings; (ii) in writing, if a copy of the writing is furnished simultaneously to the opposing party; (iii) orally, upon adequate notice to the opposing party; (iv) or as otherwise permitted by law." The clerk is a court official and the prosecutor should not have given the clerk the document without giving defense counsel a copy. Although the State contends the document was given to the clerk in response to her question about what case was being tried, the prosecutor could have responded by simply telling her the case numbers. However, in light of the overwhelming evidence in this case, we hold that this conduct constituted harmless error.

In sum, we find no error in defendants convictions for second-degree trespass.

No error.

Judges BIGGS concurs.

Judge Greene dissents.

GREENE, Judge, dissenting.

Because I disagree with the majority's conclusion "the evidence presented at trial was sufficient to support defendants' convictions for second-degree trespass," I dissent.

As a general proposition, one is guilty of second-degree trespass if one remains on the premises of another after being asked to leave by an authorized person. *See* N.C.G.S. § 14-159.13(a) (2001). As the majority recognizes, if "the premises are open to the public, the occupants of those premises have the implied consent of the owner/lessee/possessor to be on the premises, and that consent can be revoked only upon some showing the occupants have committed acts sufficient to render the implied consent void."[4] Thus, people in a public area may only be asked to leave for some cause. 87 C.J.S. *Trespass* § 183, at 813 (2000). Accordingly, the burden is on the State

---

4. The majority lists several examples of acts, which if proven by the State, would render implied consent void.

in a second-degree trespass prosecution, to prove defendants performed acts rendering implied consent void and giving the occupants or an authorized person cause to ask them to leave.

In this case, defendants were asked to leave a public place during a time it was open to the public. Although they expressed a desire to visit with CP&L's chief executive officer, whose office was located on a different floor in the building and not in a public place, they never made any attempt to enter that private office. Indeed, a "key card" was necessary to access that private space. As there is no evidence defendants had a "key card," they had no ability to enter that area of the building. Furthermore, there is no evidence defendants caused any disruption in the lobby, either before or after they were asked to leave.[5] Accordingly, there has been no showing defendants engaged in any act justifying their exclusion from the public space in the CP&L Building. Their stated intention to visit a place they could not in fact visit is not an act justifying their ouster. As the motions to dismiss should have been allowed by the trial court, the convictions must therefore be reversed.

I further disagree with the majority's conclusion the improper *ex parte* communication by the prosecutor "in light of the overwhelming evidence in this case . . . constituted harmless error." The evidence of defendants' guilt was not "overwhelming" as the majority suggests. Instead, as discussed above, it was insufficient to even reach a jury. Accordingly, this constitutes grounds for granting defendants a new trial.

The majority also ignores other assignments of error asserted by defendants.[6] This includes the trial court's failure to allow defendants to make an offer of proof on the defense of necessity, thereby pre-

5. The majority relies on *Maine v. Armen*, 537 A.2d 1143 (Me. 1988) for the proposition as soon as defendants' were informed they would be unable to meet with the C.E.O. of CP&L, they necessarily had no other legitimate purpose for being in the public lobby. In *Armen*, however, the defendant entered the lobby of Representative Snowe's district office and prevented the office manager from performing any work while he was present. In this case, defendants did not enter CP&L's actual office space. Further, in *Armen*, the only legitimate business the defendant could conduct was visiting Representative Snowe or her staff. In this case, the evidence showed the CP&L Building's public lobby contained various businesses and restaurants and was available as a public walk through to access those businesses and restaurants.

6. Along with the assignment of error relating to the trial court's refusal to allow defendants to make an offer of proof, defendants also assert application of second-degree trespass violated their right of free speech under both the federal and North Carolina constitutions. As I would reverse the trial court's denial of the motions to dismiss the charges, I would not reach the constitutional issue.

cluding appellate review of the trial court's grant of the State's motion *in limine* as to any evidence relating to the necessity defense. Failure to allow an offer of proof to preserve testimony for appellate review constitutes reversible error. *See State v. Silva*, 304 N.C. 122, 134-36, 282 S.E.2d 449, 456-58 (1981). In this case, once the trial court determined defendants would not be allowed to pursue the necessity defense at trial, defendants attempted to preserve the evidence for appellate review. The refusal to allow an offer of proof constituted prejudicial and reversible error warranting a new trial.[7]

---

7. In addition, the failure to allow an offer of proof also shows the *ex parte* communication by the prosecutor was not harmless, as the document referenced defendants' intended necessity defense and the trial court, at least in part, based its denial of an offer of proof on concerns defendants would attempt to "put on a show."