IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 18-45

 Filed: 6 November 2018

Harnett County, No. 17 CRS 50123

STATE OF NORTH CAROLINA,

 v.

KANDRA DORELL NICKENS, Defendant.

 Appeal by defendant from judgment entered 10 August 2017 by Judge C.

Winston Gilchrist in Harnett County Superior Court. Heard in the Court of Appeals

21 August 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General William A.
 Smith, for the State.

 The Law Office of Sterling Rozear, PLLC, by Sterling Rozear, for defendant-
 appellant.

 HUNTER, JR., ROBERT N., Judge.

 Kandra Dorell Nickens (“Defendant”) appeals from a 10 August 2017 judgment

after a jury convicted her of resisting a law enforcement officer and of second-degree

trespass. The trial court sentenced Defendant to a sentence of forty-five days,

suspended with twelve months of special, supervised probation and seven days in the

custody of the Harnett County Sheriff’s Office. Defendant argues on appeal: (1) the

indictment was insufficient in the charge of resisting a public officer; (2) the trial

court erred by denying Defendant’s motion to dismiss the charge of resisting a public
 STATE V. NICKENS

 Opinion of the Court

officer; (3) the trial court erred by denying Defendant’s motion to dismiss the charge

of second-degree trespass, due to a fatal variance between the indictment and

evidence offered at trial; (4) the trial court erred by denying Defendant’s motion to

dismiss the charge of second-degree trespass based on Defendant’s lack of implied

consent to be on the premises; (5) the trial court committed plain error instructing

the jury on second-degree trespass; and, (6) Defendant received ineffective assistance

of counsel.

 We disagree, and hold (1) the indictment alleged sufficient facts for each

element of the offenses charged; (2) the trial court did not err in denying Defendant’s

motions to dismiss the charges of resisting a public officer and second degree trespass

based on a fatal variance and lack of implied consent; (3) the trial court did not err in

its jury instructions; and, (4) hold defense counsel’s performance did not constitute

ineffective assistance of counsel.

 I. Factual and Procedural Background

 On the morning of 12 January 2017, Defendant went to the North Carolina

Division of Motor Vehicles (“NCDMV”) Driver’s License Office in Erwin, North

Carolina, to update her address. Senior Examiner Melissa Overby (“Ms. Overby”)

assisted Defendant, asked for her driver’s license, and told her to take a seat.

Defendant, who was wearing a head scarf, complied. Ms. Overby informed Defendant

her photo could not be taken if she was wearing the scarf. Ms. Overby then asked

 -2-
 STATE V. NICKENS

 Opinion of the Court

Defendant if she had a medical or religious reason for wearing the scarf, and

Defendant said she did.

 Ms. Overby provided Defendant a “head gear affidavit[],” on which Defendant

could declare a medical or religious exemption, thus allowing her to wear the scarf in

her license photo. Defendant told Ms. Overby she would neither sign the form nor

remove her scarf. Defendant then “got upset” and told Ms. Overby she wanted

someone else to take her picture. Ms. Overby told Defendant to have a seat in a

nearby station until another examiner became available to assist her. Defendant

grew more upset, and “started using some cuss words[.]”

 Ms. Overby “realized it wasn’t going anywhere” and turned to her computer to

enter Defendant’s driver’s license number and enter a note in her file concerning the

dispute. At that time, Defendant stood nearby “wanting her driver’s license back.”

Ms. Overby was “listening to her, but not really listening to what she was saying

because . . . at that point she is upset[.]” Defendant “kept getting louder and louder

and louder[.]”

 During this time, Inspector Brandon Wall of the NCDMV License and Theft

Bureau (“Inspector Wall”) was in his office in a separate part of the building when a

loud voice drew his attention. A former detective with the Lee County Sheriff’s office,

Inspector Wall said the voice he heard, “piqued my law enforcement interest.”

Inspector Wall—dressed in his “Class B” uniform that included a badge, sidearm, and

 -3-
 STATE V. NICKENS

 Opinion of the Court

handcuff case—walked from his office to the public lobby of the NCDMV, where he

saw Defendant “standing up, talking loudly.” He saw Defendant creating a scene

that left other customers in the lobby “in disarray” and “looking around, trying to

figure out what was going on.” Inspector Wall attempted to get Defendant’s attention,

was unable to do so, and subsequently approached her. Inspector Wall saw that Ms.

Overby had Defendant’s license in her hand.

 Based on Defendant’s loud talking and cursing, Inspector Wall told Defendant

she needed to leave. Defendant replied “she was in a public building[, s]he wanted a

real law enforcement officer[, and s]he wasn’t going to leave.” Inspector Wall

repeated that “she had to go.” He reached to take Defendant’s license from Ms.

Overby. As Inspector Wall was telling Defendant to leave a second time, he touched

Defendant’s elbow to “guide her out.” Angered by Inspector Wall’s action, Defendant

yelled at him, “get your f***ing hands off me.” Inspector Wall pulled away and

reiterated his request for Defendant to leave. His attempts to guide Defendant out

of the building were polite, but firm, and the touching was not forceful in nature.

 Inspector Wall again reached toward Defendant in an attempt to “guide her”

out of the building. Defendant shoved Inspector Wall, and a “pushing match” ensued

for “ten seconds to fifteen, twenty seconds.” Inspector Wall began trying to effect an

arrest. Defendant headed towards the front door, but Inspector Wall believed “that’s

not an option at this point[.]” As the two struggled, they became “locked up.”

 -4-
 STATE V. NICKENS

 Opinion of the Court

Inspector Wall tried to restrain Defendant as she tried to get away, and Defendant

“lash[ed] out at” Inspector Wall. Inspector Wall then “took [Defendant] down to the

ground” and Defendant commented “get off of me” and “I want a real cop[.]” Inspector

Wall replied, “I am a cop[,]” and other employees of the DMV told Defendant that

Inspector Wall “was a cop as well.”

 Scared by the events, Ms. Overby called the police. An officer with the Erwin

Police Department arrived and assisted Inspector Wall. Defendant was taken to a

break room in the back of the building, where she was “still cursing, still yelling.”

During the struggle, Defendant bit Inspector Wall in the arm, and continued to yell

at him and to resist. Inspector Wall also suffered an abrasion to his elbow.

Throughout Defendant’s interaction with Inspector Wall, she demanded a “real cop,”

and Inspector Wall and Ms. Overby told her Inspector Wall was, in fact, “police” and

a “real cop.”

 On 20 February 2017, a grand jury in Harnett County indicted Defendant for

one count each of assault inflicting physical injury on a law enforcement officer,

resisting a public officer, and second-degree trespass. On 7 August 2017, the case

came on for trial in Harnett County Superior Court. On 10 August 2017, a jury found

Defendant not guilty of assault inflicting physical injury on a law enforcement officer,

and guilty of resisting a public officer and of second-degree trespass. The trial court

found Defendant to have a prior record level II for misdemeanor sentencing purposes;

 -5-
 STATE V. NICKENS

 Opinion of the Court

sentenced Defendant to 45 days in the custody of the Sheriff of Harnett County; and,

suspended the sentence for 12 months of special, supervised probation, with an active

term of seven days in the Sheriff’s custody. Defendant gave oral notice of appeal.

 II. Jurisdiction

 Our jurisdiction over an appeal from a final judgment of a North Carolina

Superior Court is appropriate pursuant to N.C. Gen. Stat. § 7A-27(b) (2017) and N.C.

Gen. Stat. § 15A-1444(a) (2017).

 III. Standard of Review

A. Sufficiency of the Indictment

 When evaluating the sufficiency of an indictment, North Carolina law has

established

 [t]here can be no trial, conviction, or punishment for a
 crime without a formal and sufficient accusation. In the
 absence of an accusation the court acquires no jurisdiction
 whatever, and if it assumes jurisdiction a trial and
 conviction are a nullity. [W]here an indictment is alleged
 to be invalid on its face, thereby depriving the trial court of
 [subject matter] jurisdiction, a challenge to that indictment
 may be made at any time, even if it was not contested in
 the trial court. This Court review[s] the sufficiency of an
 indictment de novo. An arrest of judgment is proper when
 the indictment wholly fails to charge some offense
 cognizable at law or fails to state some essential and
 necessary element of the offense of which the defendant is
 found guilty. The legal effect of arresting the judgment is
 to vacate the verdict and sentence of imprisonment below,
 and the State, if it is so advised, may proceed against the
 defendant upon a sufficient bill of indictment.

 -6-
 STATE V. NICKENS

 Opinion of the Court

State v. Harris, 219 N.C. App. 590, 593, 724 S.E.2d 633, 636 (2012) (citations and

internal quotation marks omitted, alterations in Harris).

B. Motions to Dismiss

 Our Court reviews a trial court’s denial of a motion to dismiss de novo. State

v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). A denial of a motion to

dismiss is proper if “there is substantial evidence (1) of each essential element of the

offense charged, and (2) that the defendant is the perpetrator of the offense.” Id. at

62, 650 S.E.2d at 33 (citation omitted). On a motion to dismiss, the trial court must

consider the evidence in the light most favorable to the State. State v. Rose, 339 N.C.

172, 192-193, 451 S.E.2d 211, 223 (1994) (citation omitted).

C. Ineffective Assistance of Counsel

 “It is well established that ineffective assistance of counsel claims brought on

direct review will be decided on the merits when the cold record reveals that no

further investigation is required . . . .” State v. Thompson, 359 N.C. 77, 122-23, 604

S.E.2d 850, 881 (2004) (citation and quotation marks omitted). “Thus, when this

Court reviews ineffective assistance of counsel claims on direct appeal and

determines that they have been brought prematurely, we dismiss those claims

without prejudice, allowing defendant to bring them pursuant to a subsequent motion

for appropriate relief in the trial court.” Id. at 123, 604 S.E.2d at 881. “The standard

of review for alleged violations of constitutional rights is de novo. Once error is

 -7-
 STATE V. NICKENS

 Opinion of the Court

shown, the State bears the burden of proving the error was harmless beyond a

reasonable doubt.” State v. Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444

(2009) (citations omitted).

D. Plain Error

 “In criminal cases, an issue that was not preserved by objection noted at trial

and that is not deemed preserved by rule or law without any such action nevertheless

may be made the basis of an issue presented on appeal when the judicial action

questioned is specifically and distinctly contended to amount to plain error.” N.C.R.

App. P. 10(a)(4); see also State v. Goss, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007).

Our Supreme Court “has elected to review unpreserved issues for plain error when

they involve either (1) errors in the judge’s instructions to the jury, or (2) rulings on

the admissibility of evidence.” State v. Gregory, 342 N.C. 580, 584, 467 S.E.2d 28, 31

(1996).

 IV. Analysis

A. Sufficiency of the Indictment

 Defendant first argues the trial court lacked jurisdiction over the charge of

resisting a public officer because the indictment was invalid on its face. Defendant

contends the indictment is facially invalid because it (1) “fails to allege the public

office held by Inspector Wall with sufficient specificity to allow [Defendant] to prepare

 -8-
 STATE V. NICKENS

 Opinion of the Court

a defense,” and (2) “fails to fully and clearly articulate a duty that Inspector Wall was

attempting to discharge.”

 Indictment Requirements

 Under Section 15A-924(a)(5), an indictment must contain:

 A plain and concise factual statement in each count which,
 without allegations of an evidentiary nature, asserts facts
 supporting every element of a criminal offense and the
 defendant’s commission thereof with sufficient precision
 clearly to apprise the defendant or defendants of the
 conduct which is the subject of the accusation.

N.C. Gen. Stat. § 15A-924(a)(5) (2017). “As a prerequisite to its validity, an

indictment must allege every essential element of the criminal offense it purports to

charge, although it need only allege the ultimate facts constituting each element of

the criminal offense.” Harris, 219 N.C. App. at 592, 724 S.E.2d at 636 (citations and

internal quotation marks, and brackets omitted). “[W]hile an indictment should give

a defendant sufficient notice of the charges against him, it should not be subjected to

hyper technical scrutiny with respect to form.” Id. at 592, 724 S.E.2d at 636 (citation

omitted). Generally, “an indictment for a statutory offense is sufficient, if the offense

is charged in the words of the statute, either literally or substantially, or in equivalent

words.” Id. at 593, 724 S.E.2d at 636 (citation omitted). Considering the general

sufficiency of allegations, our Supreme Court has determined a warrant or bill of

indictment must identify the officer—the person alleged to have been resisted,

delayed or obstructed—by name; indicate the official duty he was discharging or

 -9-
 STATE V. NICKENS

 Opinion of the Court

attempting to discharge; and should point out, generally, the manner in which the

defendant is charged with having resisted, delayed, or obstructed the officer. State

v. Smith, 262 N.C. 472, 474, 137 S.E.2d 819, 821 (1964); State v. Fenner, 263 N.C.

694, 700, 140 S.E.2d 349, 353 (1965); State v. Wiggs, 269 N.C. 507, 512, 153 S.E.2d

84, 88 (1967); State v. White, 3 N.C. App. 443, 445, 65 S.E.2d 19, 21 (1968).

 The indictment by which the Grand Jury charged Defendant alleges violations

of: (I) N.C. Gen. Stat. § 14-37(c)(1), “ASSAULT PHYSICAL INJURY LEO”; (II) N.C.

Gen. Stat. § 14-223, “RESISTING PUBLIC OFFICER”; and (III) N.C. Gen. Stat. § 14-

159.13, “SECOND DEGREE TRESPASS.” [R. 4] The indictment specifies:

 I. The jurors for the State upon their oath present that on
 or about the date of offense shown and in the county named
 above the defendant named above unlawfully, willfully and
 feloniously did assault Agent B.L. Wall, a state law
 enforcement officer employed by the North Carolina
 Division of Motor Vehicles who was discharging or
 attempting to discharge his official duties, by scratching
 and hitting the officer with her hands and biting the officer
 on the back of the arm, and inflicted physical injury on the
 officer.

 II. The jurors for the State upon their oath present that on
 or about the date of offense shown and in the county named
 above the defendant named above unlawfully and willfully
 did resist, delay and obstruct Agent B.L. Wall, a public
 officer holding the office of North Carolina State Law
 Enforcement Agent, by refusing commands to leave the
 premises, assaulting the officer, refusing verbal commands
 during the course of arrest for trespassing and assault, and
 continuing to resist arrest.

 III. The jurors for the State upon their oath present that

 - 10 -
 STATE V. NICKENS

 Opinion of the Court

 on or about the date of offense shown and in the county
 named above the defendant named above unlawfully and
 willfully did without authorization remain on the premises
 of the North Carolina Division of Motor Vehicles Driver’s
 License Office located at 125 W. Jackson Blvd., Erwin, N.C.
 28339, after having been notified not to remain there by a
 person in charge of the premises, Agent B.L. Wall.

 We first must assess whether the indictment sufficiently names the officer. See

Smith, 262 N.C. at 474, 137 S.E.2d at 821. In State v. Powell, for example, this Court

considered the sufficiency of an indictment’s specificity. 10 N.C. App. 443, 179 S.E.2d

153 (1971). We held because the warrant neither named the officer on its face nor

named the defendant in the order of arrest, the warrant was insufficient, fatally

defective, and void. Id. at 450, 179 S.E.2d at 158. In State v. McKoy, this Court held

indictments “do not need to state the victim’s full given name, nor do they need to add

periods after each letter in initials in order to accomplish the common sense

understanding that initials represent a person.” 196 N.C. App. 650, 654, 675 S.E.2d

406, 409 (2009).

 Here, in the first count, Inspector Wall is identified as “Agent B.L. Wall, a state

law enforcement officer employed by the North Carolina Division of Motor Vehicles.”

In the second count, he is identified as “Agent B.L. Wall, a public officer holding the

office of North Carolina Law Enforcement Agent.” Both counts, taken together,

provide Defendant with sufficient information to identify and locate Inspector Wall.

Defendant relies on State v. Swift to support her argument, arguing the indictment

 - 11 -
 STATE V. NICKENS

 Opinion of the Court

insufficiently identifies the officer. See State v. Swift, 105 N.C. App. 550, 414 S.E.2d

65 (1992). Such reliance is misplaced, however, because in Swift the indictment

named the wrong officer. See id. at 552-53, 414 S.E.2d at 67. Unlike the indictment

in Swift, the indictment here identifies the correct officer, by name, as the one who

has been resisted, delayed, or obstructed. See Smith, 262 N.C. at 474, 137 S.E.2d at

821. Unlike Powell, where the warrant was insufficient, see 10 N.C. App. at 450, 179

S.E.2d at 158, we hold the indictment sufficient because it names the officer on its

face, including initials and full last name. We likewise hold the specificity of the office

held by Inspector Wall facially sufficient. Inspector Wall’s identification in the first

charge as “employed by the North Carolina Division of Motor Vehicles[,]” and in the

second charge as “holding the office of North Carolina Law Enforcement Agent[,]”

provides enough information to identify Inspector Wall by both name and

employment.

 We also must assess whether the indictment specifies the official duty

Inspector Wall was discharging or attempting to discharge. See Smith, 262 N.C. at

474, 137 S.E.2d at 821. In count two, the indictment charges Defendant with

“refusing commands to leave the premises,” “refusing verbal commands during the

course of arrest for trespassing and assault[,]” and “continuing to resist arrest.” In

count three, the indictment specifies Defendant “did without authorization remain

on the premises of the North Carolina Division of Motor Vehicles Driver’s License

 - 12 -
 STATE V. NICKENS

 Opinion of the Court

Office located at 125 W. Jackson Blvd., Erwin, N.C. 28339, after having been notified

not to remain there by a person in charge of the premises.” We hold the charges

specifically state the duties Inspector Wall was attempting to discharge, namely:

commanding Defendant to leave the premises and arresting or attempting to arrest

her when she failed to comply.

 Finally, to determine whether the indictment is facially valid, we must assess

whether it properly points out, in a general manner, the way Defendant is charged

with resisting or attempting to resist or obstruct Inspector Wall. See Smith, 262 N.C.

at 474, 137 S.E.2d at 821. Under Section 14-223, “[i]f any person shall willfully and

unlawfully resist, delay or obstruct a public officer in discharging or attempting to

discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor.” N.C. Gen.

Stat. § 14-223 (2017); see State v. Kirby, 15 N.C. App. 480, 488, 190 S.E.2d 320, 325

(1972) (“[T]he resisting of the public officer in the performance of some duty is the

primary conduct proscribed by this section, and the particular duty the officer is

performing while being resisted is of paramount importance and is material to the

preparation of the defense[.]”). Therefore, we must determine whether Inspector Wall

was acting within the scope of his duties in his interaction with Defendant.

 North Carolina caselaw has not specifically addressed the scope of NCDMV

officers’ powers to arrest, and neither Defendant nor the State have cited to cases

directly on point. N.C. Gen. Stat. § 20-49.1 states, in pertinent part:

 - 13 -
 STATE V. NICKENS

 Opinion of the Court

 (a) In addition to the law enforcement authority granted in
 G.S. 20-49 or elsewhere, the Commissioner and the officers
 and inspectors of the Division whom the Commissioner
 designates have the authority to enforce criminal laws
 under any of the following circumstances:

 (1) When they have probable cause to believe that a person
 has committed a criminal act in their presence and at the
 time of the violation they are engaged in the enforcement
 of laws otherwise within their jurisdiction.

N.C. Gen. Stat. § 20-49.1(a) (2017). Defendant acknowledges in her brief that DMV

Inspectors do have authority to enforce criminal laws “under certain limited

circumstances.”

 N.C Gen. Stat. § 20-49.1(a) contains an expansive grant of power that vests

DMV inspectors with “the same powers vested in law enforcement officers by statute

or common law.” N.C. Gen. Stat. § 20-49.1(a). While we recognize the legislature has

narrowed the jurisdiction of DMV inspectors, Inspector Wall was acting under the

authority given to him by N.C. Gen. Stat. § 20-49 at the time the disturbance began.

See N.C. Gen. Stat. § 20-49 (2017). While not unlimited, Inspector Wall’s authority

exists in the office where he works. See N.C. Gen. Stat. § 20-49.1(a). Accordingly, we

hold Inspector Wall was acting within the scope of his duties during his interaction

with Defendant.

 Based on the above, we hold the indictment facially sufficient. It identified

Inspector Wall, by name and office; the duties to be discharged by Inspector Wall;

and, the general manner in which Defendant obstructed Inspector Wall in the

 - 14 -
 STATE V. NICKENS

 Opinion of the Court

discharge of his duties. See Smith, 262 N.C. at 474, 137 S.E.2d at 821. Even though

the indictment could have been be more specific, we decline to require that it be

hyper-technical. See Harris, 219 N.C. App. at 592, 724 S.E.2d at 636. It identified

charges against Defendant with ultimate facts allowing Defendant to sufficiently

mount a defense. Accordingly, we hold the indictment was sufficiently specific and

facially valid.

B. Motions to Dismiss

 i. Resisting a Public Officer

 Defendant next asserts the trial court erred by denying Defendant’s motion to

dismiss the charge of resisting a public officer. Defendant argues the State presented

insufficient evidence Inspector Wall was discharging a duty of his office at the time

of Defendant’s arrest.

 The elements of resisting arrest are:

 1) that the victim was a public officer;

 2) that the defendant knew or had reasonable grounds to
 believe that the victim was a public officer;

 3) that the victim was discharging or attempting to
 discharge a duty of his office;

 4) that the defendant resisted, delayed, or obstructed the
 victim in discharging or attempting to discharge a duty of
 his office; and

 5) that the defendant acted willfully and unlawfully, that
 is intentionally and without justification or excuse.

 - 15 -
 STATE V. NICKENS

 Opinion of the Court

State v. Sinclair, 191 N.C. App. 485, 488-89, 663 S.E.2d 866, 870 (2008) (citations

omitted); see also N.C. Gen. Stat. § 14-223. This statute “presupposes lawful conduct

of the officer in discharging or attempting to discharge a duty of his office.” Id. at

489, 663 S.E.2d at 870. We must consider Section 14-233 and its elements in

conjunction with the scope of authority established in Sections 20-49 and 20-49.1. It

is clear Section 20-49.1 is dependent upon Section 20-49, as it defines “Supplemental

police authority of Division officers,” and is coextensive with the grant of authority

delineated in Section 20-49. See N.C. Gen. Stat. §§ 14-223, 20-49, 20-49.1.

 The State presented evidence at trial showing Inspector Wall discharged a

duty falling within the scope of both Sections 20-49 and 20-49.1. The evidence also

showed Defendant’s conduct satisfied each element of resisting arrest. See N.C. Gen.

Stat. § 14-223; Sinclair, 191 N.C. App. at 488-89, 663 S.E.2d at 870. As explained

above, Inspector Wall was discharging his duty by commanding Defendant to leave

the premises and arresting her when she failed to comply. Sections 20-49 and 20-

49.1 delineate Inspector Wall’s scope of authority, and define the limits of his

authority as a “inspector[] of the Division [of Motor Vehicles].” N.C. Gen. Stat. § 20-

49.1. It is clear from the evidence presented Inspector Wall acted within the

parameters established under both Section 20-49 and 20-49.1 when taken together.

 Additionally, under Section 15A-401, “[a]n officer may arrest without a

warrant any person who the officer has probable cause to believe has committed a

 - 16 -
 STATE V. NICKENS

 Opinion of the Court

criminal offense . . . in the officer’s presence.” N.C. Gen. Stat. § 15A-401(b)(1) (2017).

When Defendant refused to leave the premises of the DMV office, Inspector Wall had

probable cause to believe Defendant committed a criminal offense. See Parker v.

Hyatt, 196 N.C. App. 489, 497, 675 S.E.2d 109, 114 (2009) (“[T]he authority of the

State to charge an offender would be subverted if an officer imbued with power to

arrest was required to ignore the crime occurring in his or her jurisdiction.”).

Accordingly, we hold the trial court’s denial of the motion to dismiss the charge of

resisting a public officer was proper.

 ii. Second-Degree Trespass

 Defendant next asserts the trial court erred by denying Defendant’s motion to

dismiss the charge of second-degree trespass, because of a fatal variance.

 N.C. Gen. Stat. § 14-159.13 provides:

 (a) Offense. – A person commits the offense of second
 degree trespass if, without authorization, he enters or
 remains on premises of another:

 (1) After he has been notified not to enter or remain there
 by the owner, by a person in charge of the premises, by a
 lawful occupant, or by another authorized person . . . .

N.C. Gen. Stat. § 14.159.13 (2017).

 Defendant argues there was a fatal variance between the allegation in the

indictment and the evidence offered at trial. Specifically, Defendant contends the

State did not present sufficient evidence Inspector Wall was “a person in charge of

 - 17 -
 STATE V. NICKENS

 Opinion of the Court

the premises” and therefore, the trial court should have granted Defendant’s motion

to dismiss this charge. However, Defendant concedes this issue was not preserved

for appellate review at trial, and requests this Court to invoke Rule 2 to reach the

merits of this argument.

 To prevent manifest injustice to a party, or to
 expedite decision in the public interest, either court of the
 appellate division may, except as otherwise expressly
 provided by these rules, suspend or vary the requirements
 or provisions of any of these rules in a case pending before
 it upon application of a party or upon its own initiative, and
 may order proceedings in accordance with its directions.

N.C.R. App. P. 2 (2018).

 “This Court repeatedly has held a [d]efendant must preserve the right to

appeal a fatal variance.” State v. Hill, 247 N.C. App. 342, 347, 785 S.E.2d 178, 182

(2016) (citations and quotation marks omitted). “If the fatal variance was not raised

in the trial court, this Court lacks the ability to review that issue.” Id. at 247, 785

S.E.2d at 182 (citation omitted); see also N.C.R. App. P. 10 (2018). This Court should

only invoke Rule 2 in “exceptional circumstances . . . in which a fundamental purpose

of the appellate rules is at stake.” State v. Pender, 243 N.C. App. 142, 149, 776 S.E.2d

352, 358 (2015) (citation omitted).

 Defendant argues the State did not prove Inspector Wall was a “person in

charge” for purposes of the trespass offense. N.C. Gen. Stat. § 14-159.13. Neither

the statute itself nor prior caselaw address the definition of a “person in charge.” N.C.

 - 18 -
 STATE V. NICKENS

 Opinion of the Court

Gen. Stat. § 14-159.13. “Charge” is defined as “to entrust with responsibilities or

duties.” Black’s Law Dictionary 282 (10th ed. 2014). Defendant has failed to argue

how a deficiency in additional evidence as to whether Inspector Wall was “person in

charge” resulted in a manifest injustice to herself. Further, Defendant has failed to

argue how this purported error prevented the proper preparation of her own defense

against the crime charged. Thus, we are unpersuaded to invoke Rule 2 to address

this issue.

 iii. Lack of Implied Consent

 Defendant next asserts the trial court erred by denying Defendant’s motion to

dismiss the charge of second degree trespass, based on Defendant’s lack of implied

consent to be on the premises.

 Under Section 14-159.13, generally, those who enter premises open to the

public have the implied consent of the owner to remain. State v. Marcoplos, 154 N.C.

App. 581, 582, 572 S.E.2d 820, 821 (2002); N.C. Gen. Stat. § 14-159.13 (2017). “If,

however, the premises are open to the public, the occupants of those premises have

the implied consent of the owner/lessee/possessor to be on the premises, and that

consent can be revoked only upon some showing the occupants have committed acts

sufficient to render the implied consent void.” Id. at 582-583, 572 S.E.2d at 821-822

(citation omitted). “[O]ne who lawfully enters a place may be subject to conviction for

trespass if he or she remains after being asked to leave by someone with authority.”

 - 19 -
 STATE V. NICKENS

 Opinion of the Court

Id. at 583, 572 S.E.2d at 821-822; see also N.C. Gen. Stat. § 14-159.13.

 The evidence at trial shows Defendant raised her voice and began swearing at

the DMV employee who possessed her license. When Inspector Wall told Defendant

to leave, he picked up Defendant’s license and attempted to escort her out of the

building. By telling Defendant to leave the office, Inspector Wall revoked Defendant’s

implied consent to remain. Inspector Wall’s possession of Defendant’s license did not

prevent her from leaving the building. Inspector Wall picked up Defendant’s license

from Ms. Overby. Inspector Wall attempted to escort Defendant off the property with

all of her possessions. Defendant’s refusal to leave the premises and becoming

belligerent with the DMV employees and Inspector Wall prevented her from

retrieving her license. Further, Inspector Wall was established at trial as someone

who fit the definition of a lawful occupant and authorized person. Accordingly we

affirm the trial court’s denial of the motion to dismiss.

C. Plain Error, Jury Instruction

 Finally, Defendant asserts the trial court committed plain error in its jury

instruction on second-degree trespass. Defendant asserts the trial court committed

plain error by instructing the jury on additional theories of second-degree trespass

not alleged in the indictment. Defendant argues the evidence showing Inspector Wall

was a “person in charge of the premises” is insufficient to support a conviction on that

theory alone. Defendant did not object and this argument was not presented at trial.

 - 20 -
 STATE V. NICKENS

 Opinion of the Court

However, because we hold the inclusion of the additional words is not erroneous, we

do not need to employ a plain error analysis.

 North Carolina Pattern Jury Instruction 214.31A describes four potential

persons who can notify a defendant not to enter or remain on the premises: the owner,

a person in charge of the premises, a lawful occupant, an authorized person. N.C.P.I.

Crim. 214.31A (2015). Defendant was indicted for “remain[ing] on the premises . . .

after having been notified not to remain there by a person in charge of the premises.”

In the case sub judice, the indictment specifically alleged Inspector Wall was a

“person in charge” of the premises. However, the trial court instructed the jury to

find Defendant guilty if she was told not to remain on the premises “by a person in

charge of the premises, a lawful occupant or another authorized person.”

 However, the additional words “a lawful occupant, or another authorized

person” do not constitute other disjunctive theories included in the jury instructions.

Examining the statute’s language, it is apparent the list of persons is merely a

disjunctive list of descriptors, not additional theories.

 In the construction of statutes, the ejusdem generis rule is
 that where general words follow a designation of particular
 subjects or things, the meaning of the general words will
 ordinarily be presumed to be, and construed as, restricted
 by the particular designations and as including only things
 of the same kind, character and nature as those specifically
 enumerated.

State v. Lee, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970) (citation omitted); see also

 - 21 -
 STATE V. NICKENS

 Opinion of the Court

United States v. Aguilar, 515 U.S. 593, 615-16, 132 L. Ed. 2d 520, 538 (1995). An

associative canon of statutory construction, noscitur a sociis, teaches “associated

words explain and limit each other. When a word used in a statute is ambiguous or

vague, its meaning may be made clear and specific by considering the company in

which it is found and the meaning of the terms which are associated with it.” City of

Winston v. Beeson, 135 N.C. 271, 280, 47 S.E. 457, 460 (1904).1

 Here, the notification element of second-degree trespass “by the owner, by a

person in charge of the premises, by a lawful occupant, or by another authorized

person” specifies a list appropriate to interpret using ejusdem generis and noscitur a

sociis. See N.C. Gen. Stat. § 14-159.13; Lee, 277 N.C. at 244, 176 S.E.2d at 774. The

descriptors define persons who could notify Defendant they were no longer authorized

to remain on the premises, not additional theories. From the plain language of the

statute, we cannot determine any substantive differences between the descriptors

included in the jury instructions not alleged in the indictment. Accordingly, the trial

court did not err in its jury instructions on second-degree trespass.

 For the reasons discussed above, we hold the trial court did not err in its

instructions to the jury on the charge of second-degree trespass by including other

descriptors from the pattern jury instructions and in Section 14-159.13.

D. Ineffective Assistance of Counsel

 1 This case was reprinted in 1924, and paginated as 135 N.C. 192, 198 (Spring Term, 1904).

 - 22 -
 STATE V. NICKENS

 Opinion of the Court

 Defendant argues she received ineffective assistance of counsel, violating her

Sixth Amendment rights and Article 1, Section 23 of the North Carolina Constitution.

Specifically, Defendant contends her counsel was ineffective because her counsel (1)

explicitly consented to the jury instruction amounting to a misstatement of the law

regarding the specific duty Inspector Wall was discharging when he arrested

Defendant; and (2) failed to argue there was a fatal variance between the allegation

in the indictment and the evidence presented.

 Article I, Section 23 of the North Carolina Constitution and the Sixth

Amendment of the United States Constitution guarantee criminal defendants the

right to effective assistance of counsel at trial. See N.C. Const. art. I § 23; U.S. Const.,

Amend. VI; see also State v. Braswell, 312 N.C. 553, 561-62, 324 S.E.2d 241, 247-48

(1985). “[W]e expressly adopt the test set out in Strickland v. Washington as a

uniform standard to be applied to measure ineffective assistance of counsel under the

North Carolina Constitution.” Braswell, 312 N.C. at 562-63, 324 S.E.2d at 248; see

Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674 (1984).

 In order to prevail on a claim of ineffective assistance of counsel (“IAC”), a

“defendant must first show that his defense counsel’s performance was deficient and,

second, that counsel’s deficient performance prejudiced his defense.” State v.

Thompson, 359 N.C. 77, 115, 604 S.E.2d 850, 876 (2004); see also Strickland, 466 U.S.

at 687, 80 L. Ed. 2d at 693. “Deficient performance may be established by showing

 - 23 -
 STATE V. NICKENS

 Opinion of the Court

that counsel’s representation fell below an objective standard of reasonableness.”

Thompson, 359 N.C. at 115, 604 S.E.2d at 876 (citations and internal quotation marks

omitted).

 [T]o establish prejudice, a defendant must show that there
 is a reasonable probability that, but for counsel’s
 unprofessional errors, the result of the proceeding would
 have been different. A reasonable probability is a
 probability sufficient to undermine confidence in the
 outcome.

Thompson, 359 N.C. at 115, 604 S.E.2d at 876 (citations and internal quotation marks

omitted). When our Court reviews an IAC claim, “[c]ounsel is given wide latitude in

matters of strategy, and the burden to show that counsel’s performance fell short of

the required standard is a heavy one for defendant to bear.” State v. Fletcher, 354

N.C. 455, 482, 555 S.E.2d 534, 551 (2001). “Because of the difficulties inherent in

determining if counsel’s conduct was within reasonable standards, a court must

indulge a strong presumption that counsel’s conduct falls within the broad range of

what is reasonable assistance.” State v. Fisher, 318 N.C. 512, 532, 350 S.E.2d 334,

346 (1986) (citing Strickland, 466 U.S. at 689, 80 L. Ed. 2d at 694).

 Defendant asserts trial counsel explicitly consented to the jury instruction at

the charge conference regarding the specific duty Inspector Wall was discharging

when he arrested Defendant, and Defendant was prejudiced by trial counsel’s

consent. Defendant contends the trial court’s instruction, “[m]aking an arrest for

criminal conduct, which occurs in his presence, is a duty of a Division of Motor

 - 24 -
 STATE V. NICKENS

 Opinion of the Court

Vehicles agent” is an erroneous statement of the law, and thus, there is a reasonable

probability the jury would have reached a different result.

 During the charge conference, Defendant’s trial counsel discussed the correct

language at length with the State and the trial court concerning the language used

to define the specific duty Inspector Wall was attempting to discharge during

Defendant’s arrest. Defendant’s trial counsel argued the trial court should not define

a specific duty or impute a duty to Inspector Wall because whether he had a specific

duty was a separate question of fact for the jury to decide. The record indicates trial

counsel did object to one portion of the language in question:

 THE COURT: All right. I would be inclined to add that
 language out of abundance of caution, making an arrest for
 criminal conduct which occurs in his presence or
 preventing criminal conduct in a Division of Motor Vehicles
 office are duties of a DMV agent. State want to be heard
 any further about that?

 MR. PAGE: No, your Honor.

 THE COURT: Defense want to be heard any further?

 MR. KEY: Just note my exception to the second aspect of
 it.

 THE COURT: That’s noted and overruled. All right.

 At trial, counsel argued several times Inspector Wall did not have the authority

to arrest Defendant. Defense counsel specifically questioned Inspector Wall about

the power of a DMV inspector to arrest.

 - 25 -
 STATE V. NICKENS

 Opinion of the Court

 Defendant also argues her trial counsel should have argued the existence of a

fatal variance between the allegation of second-degree trespass in the indictment and

the evidence presented at trial. Because we previously held above the trial court did

not err in its jury instructions and there was no fatal variance, both did not constitute

a misstatement of the law or errors by counsel. Therefore, we hold Defendant’s IAC

claims are without merit, and Defendant did not receive ineffective assistance of

counsel.

 V. Conclusion

 For the reasons set out in our opinion above, we find no error committed at

trial and affirm the conviction of Defendant for resisting a public officer and trespass

in the second degree.

 NO ERROR.

 Judges BRYANT and ARROWOOD concur.

 - 26 -